501 So.2d 243 (1986)
James Fenton TABOR and His Wife, Mary Florence Tabor
v.
DOCTORS MEMORIAL HOSPITAL, HCA Health Services of Louisiana, Inc. d/b/a Doctors Memorial Hospital, Dr. John Dunn, and Emergency Physicians Association.
No. 85 CA 0757.
Court of Appeal of Louisiana, First Circuit.
October 15, 1986.
On Rehearing January 22, 1987.
*244 Edward J. Walters, Jr., Baton Rouge, for plaintiffs-appellants James Fenton Tabor, et al.
W. Luther Wilson, Baton Rouge, for defendants-appellees Doctors Memorial Hosp. and HCA Health Services, Inc.
Donald S. Zuber, Baton Rouge, for defendants-appellees Dr. John Dunn and Emergency Physicians Ass'n, Inc.
Before EDWARDS, WATKINS and PONDER [*], JJ.
WATKINS, Judge.
This is an action brought by James F. Tabor and Mary F. Tabor, against Doctors Memorial Hospital, HCA Health Services, Inc., Dr. John Dunn, and Emergency Physicians Association, Inc., for the wrongful death of the Tabors' son, Andrew Tabor (aged 22), by suicide, after having failed to be admitted to Doctors Memorial Hospital's psychiatric unit, Parkland. The case was tried before a jury. However, after both sides rested, defendants moved for a directed verdict under LSA-C.C.P. art. 1810, dismissing plaintiffs' suit. The trial court granted the requested directed verdict, and plaintiffs appealed. We reverse the judgment granting the directed verdict and remand the case for a determination on the merits.
On July 4, 1981, Andrew Tabor took between ten and thirteen Quaaludes. He was found late at night by his parents, who, after a considerable delay in which they sought to induce vomiting, drove Andrew to the emergency room at Doctors Memorial Hospital, where the parents supplied the necessary information to secure his admission to the emergency room. Three Nursing Service employees were in the emergency room, Kathleen Miller, R.N., John Johnson, L.P.N., and Laura Edmunds, a nurse's assistant. Andrew was examined by Dr. John Dunn, defendant. After having examined Andrew for from three to five minutes, Dr. Dunn arranged for Andrew to sign a voluntary admission form to the psychiatric unit, which Andrew signed. At this point, the hospital office demanded that the Tabors post a $400.00 deposit, although they had a Blue Cross policy which covered Andrew. The Tabors did not have $400.00. The three Nursing Service employees each suggested to Dr. Dunn that he could use a Physicians Emergency Certificate (PEC), which provided for waiver of the $400.00 deposit in the event of an emergency. Dr. Dunn declined to use the PEC, and Andrew was discharged to his parents' protection with the instructions that they "watch" Andrew.
The parents kept Andrew under their surveillance in their house the entire next day, a Sunday, which Mrs. Tabor spent also frantically seeking to obtain medical care for Andrew. Andrew wandered into the neighborhood once, but was brought back. Finally, Andrew asked to go alone to his apartment, which was just around the corner from his parents' house. His parents allowed Andrew to leave. About five minutes later, Andrew shot himself through the heart, dying almost instantly.
The trial court, as we have stated, granted a directed verdict in favor of defendants, *245 dismissing plaintiffs' suit. The authority for granting a directed verdict is LSA-C.C.P. art. 1810, which reads as follows:
A party who moves for a directed verdict at the close of the evidence offered by an opponent may offer evidence in the event that the motion is not granted, without having reserved the right so to do and to the same extent as if the motion had not been made. A motion for a directed verdict that is not granted is not a waiver of trial by jury even though all parties to the action have moved for directed verdicts. A motion for a directed verdict shall state the specific grounds therefor. The order of the court granting a motion for a directed verdict is effective without any assent of the jury. Motions for a directed verdict and motions for a judgment notwithstanding the verdict generally are derived from the Federal law, and Louisiana derives its jurisprudential test for the circumstances under which these motions should be granted from Boeing Company v. Shipman, 411 F.2d 365 (5th Cir.1969), which announces the basic test later used in Campbell v. Mouton, 373 So.2d 237 (La.App. 3d Cir. 1979). We quote the test as stated in Campbell as follows:
On motions for directed verdict and for judgment notwithstanding the verdict, the Court should consider all the evidencenot just that evidence which supports the non-mover's casebut in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motion should be denied, and the case submitted to the jury.
Thus, if reasonable men on the jury could have found in favor of plaintiffs, the motion for a directed verdict on behalf of defendants should not have been granted.
The trial court in oral reasons for judgment found that there was nothing in the record to prove (1) the standard of care defendants were required to meet, and (2) that breach of any such standard caused Andrew's suicide.
The plaintiff in actions for medical malpractice must prove as follows under the requirements of LSA-R.S. 9:2794:
A) In a malpractice action based on the negligence of a physician licensed under R.S. 37:1261 et seq., ... the plaintiff shall have the burden of proving:
1) The degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians ... licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances; and where the defendant practices in a particular specialty and where the alleged acts of medical negligence raise issues peculiar to the particular medical specialty involved, then the plaintiff has the burden of proving the degree of care ordinarily practiced by physicians... within the involved medical specialty.
2) That the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill....
There is nothing in the record to establish that Dr. Dunn was a specialist. Therefore, he is governed by the medical standards existing in the community.
We must beg to differ with the trial court in its assertion the standard of care was not proven. Generally, the testimony of Dr. Dunn and of Dr. Louis Cenac, the psychiatrist who served as chairman of the medical review panel that reviewed plaintiffs' claims before they were submitted for litigation in the courts, reveals that an emergency certificate must be issued by the emergency room physician if an emergency *246 exists, and an emergency exists if a patient is suicidal. Dr. Cenac and Dr. Dunn both were of the opinion that Andrew did not appear to be suicidal at the time he was in the emergency room. The nurses, especially John Johnson and Kathleen Miller, both of whom saw Andrew, Johnson having seen Andrew for some forty-five minutes, were very concerned and felt that Andrew's condition justified admission to the psychiatric unit, and urged Dr. Dunn to sign the PEC. Thus, while reasonable men on the jury could find that an emergency did not exist, the testimony of the nurses and the language of the findings of the medical review panel, which were admitted in evidence (properly, under LSA-R.S. 40:1299.41 et seq.) furnish ample basis for reasonable men to have held to the contrary.
We note that if causation is proven, reasonable men, under LSA-R.S. 40:2113.4, could hold the physician and the hospital liable for refusal to treat a patient in an emergency because of an inability to pay, as the quotation below from 40:2113.4 demonstrates:
A) Any general hospital licensed under this Part, which is owned or operated, or both, by a hospital service district, which benefits from being financed by the sale of bonds that are exempt from taxation as provided by Louisiana law, or which receives any other type of financial assistance from the state of Louisiana and which offers emergency room services to the public and is actually offering such services at the time, shall make its emergency services available to all persons residing in the territorial area of the hospital regardless of whether the person is covered by private, federal Medicare or Medicaid, or other insurance. Each person shall receive these services free from discrimination ... However, in no event shall emergency treatment be denied to anyone on account of inability to pay.[1]
Thus, if a hospital or physician employed by the hospital, as was the case with Dr. Dunn, denies emergency treatment on account of inability to pay, it may be held liable for damages caused by its failure to render emergency treatment. This brings us to the second issue: Could reasonable men find that Andrew's suicide was caused by the failure of Dr. Dunn to sign a PEC?
Mrs. Tabor spent the day of July 5th trying to secure medical treatment for Andrew after he was denied admission by Dr. Dunn on the night of July 4th. Dr. Dunn did not consider the situation to constitute an emergency, and indicated to the Tabors he did not consider Andrew suicidal. If Andrew had secured medical treatment from another physician or hospital, he might not have committed suicide. All these facts lead to differing analyses, depending on the viewpoints of reasonable men on the jury. Thus, we find reasonable men on the jury could conclude that Andrew's suicide was caused by failure to admit Andrew to the hospital because of the parents' inability to pay. The opposite view is equally tenable.
Thus, we hold, because reasonable men on the jury could have reached different conclusions on liability, it was improper to have granted a directed verdict. A directed verdict, we hold, should have been denied.
Having set aside the judgment of the trial court, we now reach the question of whether to consider the trial record and decide the case on the merits or to remand for a new trial. In Ragas v. Argonaut Southwest Insurance Co., 388 So.2d 707 (La.1980), our Supreme Court expresses the applicable principles as follows:
Where a finding of fact is interdicted because of some legal error implicit in the fact finding process or when a mistake of law forecloses any finding of fact, and where the record is otherwise complete, the appellate court should, if it can, render judgment on the record.

*247 This is not to say, and Gonzales [v. Xerox Corporation, 320 So.2d 163 (La. 1975)] should not be read to require, that the appellate court must find its own facts in every such case. There are cases where the weight of the evidence is so nearly equal that a firsthand view of witnesses is essential to a fair resolution of the issues. The appellate court must itself decide whether the record is such that the court can fairly find a preponderance of the evidence from the cold record. Where a view of the witnesses is essential to a fair resolution of conflicting evidence, the case should be remanded for a new trial.
A preponderance of the evidence cannot be fairly determined from the cold record in this case. The evidence is in substantial conflict as a result of which it is impossible for us to determine whether or not an emergency truly existed without deciding on the credibility of the witnesses. A trier of fact with the opportunity to hear and see the witnesses is in a much better position to resolve this conflict. The two physicians, Dr. Cenac and Dr. Dunn, were of the opinion that there was no emergency. The nurses obviously thought Andrew was suicidal, and that an emergency did exist. The jury was free to disregard medical testimony (only Dr. Cenac was qualified as an expert) and base its verdict upon lay testimony. Holmes v. Southeastern Fidelity Insurance Co., 422 So.2d 1200 (La.App. 1st Cir.1982), writs denied, 429 So.2d 133 (La.1983); Galloway v. Gaspard, 340 So.2d 579 (La.App. 1st Cir.1976). As the record presents substantial conflicts in the testimony and serious questions of credibility, we are convinced that the interests of justice would be best served by remanding for a new trial.
As we have suggested, the liability of Dr. Dunn and Doctors Memorial Hospital is interwoven. If Dr. Dunn is liable for failure to render emergency medical treatment because of financial considerations, Doctors Memorial Hospital is equally liable, as Dr. Dunn's employer.
The judgment of the trial court granting a directed verdict for defendants dismissing plaintiffs' suit is reversed and set aside, and the case remanded for a new trial as indicated herein, all costs to await final disposition of the matter.
REVERSED AND REMANDED.

ON REHEARING
PER CURIAM.
We granted a rehearing because the result we reached on original hearing was based in part upon a misreading of LSA-R.S. 40:2113.4. Subsection B of that statute makes it clear, by its definition of emergency, that the statute makes the hospital liable for failure to undertake physical treatment of an emergency nature. In the present case, Andrew Tabor's potential for suicide was purely a mental affliction.
However, defendant Doctors Hospital held itself out as and was in fact in part a mental hospital. The hospital had adopted and promulgated policies for the treatment of potential suicide cases, and had in all cases a psychiatrist on call who could be called by the attending emergency room physician when a case appeared to be one of a psychiatric nature.
From all superficial indications, a possible risk of a suicide attempt in the near future existed in Andrew Tabor's case. Yet, the resident psychiatrist was never called by Dr. Dunn. The question of the possible liability of Dr. Dunn was one on which reasonable men on the jury could decide in favor of Dr. Dunn's liability. Yet, the question was not permitted to reach the jury. This was reversible error.
The hospital contends on rehearing that insufficient facts were presented upon which reasonable men could hold the hospital liable. However, it has been held with regard to the application vel non of the doctrine of respondeat superior that whether an emergency room physician is an employee or an independent contractor is a factual issue turning on the control exercised by the hospital over his activities. *248 Hastings v. Baton Rouge General Hospital, 498 So.2d 713 (La.1986); Suhor v. Medina, 421 So.2d 271 (La.App. 4th Cir.1982). Here, Dr. Dunn was required by hospital rules to summon the house psychiatrist if a potential for suicide appeared to exist. He was also bound by other rules promulgated by the hospital which controlled the activities of the emergency room physician. Because reasonable men on the jury could hold Dr. Dunn liable for Andrew Tabor's death which resulted directly from a breach of hospital rules, reasonable men on the jury could likewise hold Doctors Memorial Hospital liable by an application of the doctrine of respondeat superior.
Our original judgment is reinstated for the reasons set forth above, and the case remanded for a new trial, all costs to await final disposition of the matter.
NEW TRIAL ORDERED.
NOTES
[*] Judge Elven E. Ponder, retired, has been assigned temporarily to this court by the Supreme Court of Louisiana to fill the vacancy created by the election of Justice Luther F. Cole to the Supreme Court.
[1] The parties stipulated that Doctors Memorial Hospital was in receipt of funds from the State of Louisiana. There is thus no question that it is subject to the provisions of LSA-R.S. 40:2113.4.