WATKINS, Judge.
This is a medical malpractice action brought by the surviving parents of a young man who died in 1981 of a self-inflicted gunshot wound approximately one day after he was released from the emergency room of the defendant hospital, Doctors Memorial Hospital. The plaintiffs, James F. and Mary F. Tabor, also sued Dr. John Dunn, the doctor on duty at the time their son was taken to the hospital.
*850 This is the second time the case reaches us on appeal. Previously, we reversed a directed verdict in favor of both defendants and remanded the case for a new trial against both defendants. Tabor v. Doctors Memorial Hospital, 501 So.2d 243 (La.App. 1st Cir.1986). Since the basic facts of the tragic incident as set forth in our previous opinion are the same as those introduced at the second trial, we quote from our original opinion as follows:
On July 4, 1981, Andrew Tabor took between ten and thirteen Quaaludes. He was found late at night by his parents, who, after a considerable delay in which they sought to induce vomiting, drove Andrew to the emergency room at Doctors Memorial Hospital, where the parents supplied the necessary information to secure his admission to the emergency room. Three Nursing Service employees were in the emergency room, Kathleen Miller, R.N., John Johnson, L.P.N., and Laura Edmunds, a nurse’s assistant. Andrew was examined by Dr. John Dunn, defendant. After having examined Andrew for from three to five minutes, Dr. Dunn arranged for Andrew to sign a voluntary admission form to the psychiatric unit, which Andrew signed. At this point, the hospital office demanded that the Tabors post a $400.00 deposit, although they had a Blue Cross policy which covered Andrew. The Tabors did not have $400.00. The three Nursing Service employees each suggested to Dr. Dunn that he could use a Physicians Emergency Certificate (PEC), which provided for waiver of the $400.00 deposit in the event of an emergency. Dr. Dunn declined to use the PEC, and Andrew was discharged to his parents’ protection with the instructions that they “watch” Andrew.
The parents kept Andrew under their surveillance in their house the entire next day, a Sunday, which Mrs. Tabor spent also frantically seeking to obtain medical care for Andrew. Andrew wandered into the neighborhood once, but was brought back. Finally, Andrew asked to go alone to his apartment, which was just around the corner from his parents’ house. His parents allowed Andrew to leave. About five minutes later, Andrew shot himself through the heart, dying almost instantly.
Tabor v. Doctors Memorial Hospital, 501 So.2d at 244.
Following remand, the case was tried by a new jury. On February 25, 1988, the jury returned a verdict in favor of both defendants.
Plaintiffs assign three errors, all of which seek to have the following conclusions of the jury reversed: that defendant, Dr. John Dunn, was not at fault; that defendant, Doctors Memorial Hospital, was not liable; that the suicide was not caused by the defendants.
Our review of the record convinces us that the clear weight of the evidence would require a finding that Dr. Dunn did not comply with the appropriate standard of care.
The testimony of Dr. Cenac and Dr. Baker established that the standard of care of an emergency room physician under the circumstances of this ease would have been for Dr. Dunn to execute the waiver and admit the patient.
The finding of the Medical Review Panel also supports t*he contention of plaintiff that Dr. Dunn’s failure to admit Andrew Tabor fell below the standard of care.
Notwithstanding the failure of Dr. Dunn to comply with the standard of care, we find no error in the ultimate determination of the jury that the death of the plaintiffs’ son was not caused by the actions of the doctor.
Under the applicable standard of appellate review we do not make an independent evaluation of the record, but examine same strictly as a reviewing court to determine whether the trial court’s factual findings are clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). We have searched the record of the new trial to determine the existence vel non of clear error, with respect to causation. We find none.
The record amply supports the jury’s decision that the actions of the de *851 fendants were not the cause of the death. Absent proof of causation, the plaintiffs cannot recover from the medical care providers.
This is the third in a series of suicide/malpractice cases, each of which turned on the issue of causation. In the first two cases, unlike the case sub judice, the plaintiffs were entitled to recover damages.
In Bourne v. Seventh Ward General Hospital, 546 So.2d 197 (La.App. 1st Cir.1989), the intentional act of the plaintiffs daughter in taking a drug overdose preceded the acts of the defendant medical care providers. Thus, the defendants’ acts were correctly determined to be an intervening and superseding cause of death. Contrarily, the intentional act of Mr. and Mrs. Tabor’s son Andrew occurred after the allegedly wrongful acts of the doctor and the hospital. The fatal gunshot wound was clearly an intervening cause of death.
In Argus v. Sckeppegrell, 472 So.2d 573 (La.1985), rev’g 459 So.2d 238 (La.App. 5th Cir.1984), the defendant doctor was charged with negligently providing drugs to a known addict who subsequently took an overdose. Although the act of the patient, whether intentional or accidental, intervened the doctor’s wrong and the death, the decedent’s act did not supersede, or take the place of, the doctor’s wrong as a causative factor. The direct connexity between the doctor’s prescription and the lethal overdose of drugs provided a strong causal link between the wrongful act and the death, which link was not broken by the intervening act of the decedent.
No direct causal link between the care received by the decedent and the cause of death exists in the instant case to prevent the suicidal act from superseding the acts of the medical care providers. As we stated in our prior opinion, “[Reasonable men on the jury could conclude that Andrew’s suicide was caused by failure to admit Andrew to the hospital because of the parents’ inability to pay. The opposite view is equally tenable.” (Emphasis added.) Tabor v. Doctors Memorial Hospital, 501 So.2d at 246.
Nor is the plaintiffs’ reliance on the case of Hastings v. Baton Rouge General Hospital, 498 So.2d 713 (La.1986) well founded. That case stands for the proposition that causation is a jury question. Thus, our original remand of the instant case was consistent with Hastings. Plaintiffs have had their opportunity to have their case go to the jury. We find no reversible error in the decision of the jury that the actions of the defendants were not the cause of the death of Andrew Tabor. Arceneaux v. Domingue, supra.
For the foregoing reasons the decision of the trial court is affirmed, all costs to be borne by appellants.
AFFIRMED.
SHORTESS, J., dissents with reasons.