598 So.2d 1128 (1992)
Norma D. HICKMAN, et al., Plaintiff-Appellant
v.
ALBERTSON'S, INC., et al., Defendant-Appellee.
No. 23355-CA.
Court of Appeal of Louisiana, Second Circuit.
April 10, 1992.
Rehearings Not Considered May 7, 1992.
Writ Denied June 5, 1992.
*1129 Jack M. Bailey, Jr., Georgia P. Kosmitis, Shreveport, for appellants.
Mayer, Smith & Roberts by Walter O. Hunter, Jr., Shreveport, for appellee Delta Beverage Group, Inc.
Bodenheimer, Jones, Klotz & Simmons by G.M. Bodenheimer, Shreveport, for appellee Albertson's, Inc.
Before MARVIN, NORRIS and LINDSAY, JJ.
LINDSAY, Judge.
The plaintiffs, Norma and Perry Hickman, filed suit for damages as the result of the alleged injuries sustained by Mrs. Hickman when a display of two-liter Pepsi bottles collapsed on her while she was shopping. The plaintiffs appeal from a judgment, based on a jury verdict, in favor of the defendants, Albertson's, Inc., and Delta Beverage Group, Inc. For the reasons assigned below, we reverse and remand.

FACTS
On October 22, 1988, Mr. and Mrs. Hickman were shopping at the grand opening of an Albertson's grocery store in Bossier City, when they approached a display of two-liter Pepsi bottles. The display, which was set up and restocked by employees of Delta Beverage, included a "tower" of stacked bottles. In front of the tower were four lower "shoppable" levels from which customers could obtain bottles for purchase.
The Hickmans testified that Mr. Hickman removed two bottles from the display. While he was placing these bottles in a shopping cart, Mrs. Hickman removed two more bottles from the level below those *1130 taken by her husband. In order to get these bottles, Mrs. Hickman, who is about 5'3" in height, had to reach above her head. Mr. and Mrs. Hickman testified that a few moments after removing the bottles, the display suddenly collapsed. Several bottles fell, striking Mrs. Hickman on the head, neck and shoulders.
An Albertson's employee from the meat department, Jimmy Speck, testified that he saw the display fall and inquired if Mrs. Hickman was hurt. According to the Hickmans, they briefly continued shopping. While Mr. Hickman purchased their groceries, Mrs. Hickman approached the customer service desk and reported the incident to the manager on duty. Although he took down her name, address and phone number, the manager did not fill out an incident report at that time.
On October 25, 1988, Mrs. Hickman was examined by Dr. Clinton G. McAlister, an orthopedic surgeon, who diagnosed a cervical sprain. On that day, the Hickmans returned to the store, and an incident report was filled out. In December, 1988, Dr. McAlister referred Mrs. Hickman to a neurosurgeon, Dr. Warren Long, Jr., who became her treating physician. Due to Mrs. Hickman's failure to respond to conservative treatment while under Dr. McAlister's care, Dr. Long recommended surgery. He performed an anterior cervical fusion and diskectomy. Subsequently, Mrs. Hickman was also diagnosed as suffering from fibrositis.
The Hickmans filed suit against Albertson's and Delta Beverage, which set up the display. Jury trial began on February 25, 1991. Delta Beverage denied the Hickmans' allegations and further contended that the Hickmans were entirely at fault because they removed bottles from the "tower" portion of the display, which was not at a "shoppable" level. Specifically, Mrs. Hickman took two end bottles from the tower. Also, Delta Beverage claimed that the display was set up pursuant to Albertson's instructions while Albertson's, in turn, contended that Delta Beverage was responsible for building and maintaining the display.
On March 1, 1991, the jury returned a verdict in favor of the defendants, assessing 100 percent fault against Mrs. Hickman. In the interrogatories, the jury found that the manner in which the bottles were displayed did not present a hazard. Neither Delta Beverage nor Albertson's was found to be negligent. The jury also found that Mrs. Hickman failed to prove that she had been injured in the accident and that Mr. Hickman suffered no loss of consortium.
The plaintiffs appealed. They assign as error the following: (1) the trial judge committed reversible error by erroneously charging the jury on the law of premises hazards and in failing to instruct the jury that the burden of proof shifts to the defendant storeowner once the plaintiff establishes a prima facie case; and (2) the trial judge erred in excluding as hearsay and opinion the testimony of one of the defendant's employees.

JURY INSTRUCTIONS

Premises Hazards and LSA-R.S. 9:2800.6
The plaintiffs contend that the trial court's jury charge on premises hazards was inadequate because it did not include LSA-R.S. 9:2800.6(B).
At the time of the accident, LSA-R.S. 9:2800.6 provided:
A. A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.
B. In a suit for damages by a person who has suffered damages as the result of a hazardous condition while on the merchant's premises, the person must prove that the accident was caused by a hazardous condition. The burden of proof then shifts to the merchant to prove that he acted in a reasonably prudent manner in exercising the duty of care he owed to the person to keep the *1131 premises free of any hazardous conditions.
C. In exculpating himself from liability under this Subsection, the merchant need not introduce the testimony of every employee of the merchant or any particular proportion thereof, but is only required to introduce the testimony of any employee shown to have actually created the hazardous condition and those employees and management personnel whose job responsibilities included inspection or cleanup of the area where the accident giving rise to the damages occurred.
D. "Merchant" means one whose business is to sell goods, foods, wares, or merchandise at a fixed place of business.
(Emphasis ours)
At trial, the plaintiffs presented special jury instructions to the court, one of which sought to have the jury instructed in accordance with Paragraph B. On appeal, the plaintiffs contend that their testimony, and that of Mr. Speck, established that the accident was caused by a hazardous condition on the merchant's premises and the jury should have been instructed that the burden then shifted to the defendants to exculpate themselves from liability. To the contrary, Delta Beverage and Albertson's argue that the plaintiffs' proposed jury instruction was not given because the trial court felt it was more appropriate to a slip and fall case instead of a "falling merchandise" case such as the one presently before us.
LSA-R.S. 9:2800.6 became effective on July 18, 1988, applying to all cases tried on or after that date. Acts 1988, No. 714. In 1990 the statute was amended. While Paragraph A remained the same, Paragraph B was substantially rewritten. It now applies when a person was injured "because of a fall...." The amendment applies only to causes of action arising on or after its effective date, September 1, 1990. See Acts 1990, No. 1025.
The jury should have been instructed in accordance with the 1988 statute which was in effect at the time the cause of action arose.[1] Therefore, we find that the trial court erred.
When the trial court has given a consequential but erroneous jury instruction, the jury verdict is tainted and not entitled to a presumption of regularity. Gonzales v. Xerox Corporation, 320 So.2d 163 (La.1975). However, appellate courts must exercise great restraint in overturning a jury verdict on the basis of erroneous jury instructions. The pertinent inquiry in making such a determination is whether the jury was misled to such an extent that it was prevented from doing justice. Cuccia v. Cabrejo, 429 So.2d 232 (La.App.5th Cir.1983), writ denied, 434 So.2d 1097 (La. 1983); Creel v. S.A. Tower & Son Tractor, Inc., 537 So.2d 752 (La.App. 1st Cir.1988).
Here, it is impossible to determine whether the jury denied liability because it did not believe the testimony of the plaintiffs and Mr. Speck as to the circumstances surrounding the alleged accident, or whether, in following the trial court's erroneous instructions, the jurors felt that, even if the accident was caused by a hazardous condition, the plaintiffs did not carry their burden of proving that the defendants did not act reasonably in exercising the duty of care owed to keep the premises free of any hazardous conditions. Under these circumstances, we believe the jury instructions were so prejudicial that the jury verdict is not entitled to a presumption of regularity.[2]
*1132 If an appellate court has all the facts before it, a trial judge's erroneous instruction to the jury does not necessarily warrant a remand. The appellate court, should, if possible, render judgment on the record. Gonzales, supra; Ragas v. Argonaut Southwest Insurance Co., 388 So.2d 707 (La.1980).
However, such de novo consideration of a case may not always be possible. In Ragas, 388 So.2d at 708, the Supreme Court stated:
Where a finding of fact is interdicted because of some legal error implicit in the fact finding process or when a mistake of law forecloses any finding of fact, and where the record is otherwise complete, the appellate court should, if it can, render judgment on the record. This is not to say, and Gonzales should not be read to require, that the appellate court must find its own facts in every such case. There are cases where the weight of the evidence is so nearly equal that a first-hand view of witnesses is essential to a fair resolution of the issues. The appellate court must itself decide whether the record is such that the court can fairly find a preponderance of the evidence from the cold record. Where a view of the witnesses is essential to a fair resolution of conflicting evidence, the case should be remanded for a new trial.
When the record presents substantial conflicts in testimony and numerous credibility calls, the interests of justice may best be served by remanding the case for a new trial. Savin v. Allstate Insurance Company, 579 So.2d 453 (La.App. 1st Cir. 1991).
Such is the case here. A preponderance of the evidence cannot be determined from the cold record. While the testimony of the Hickmans is consistent, it is hopelessly inconsistent with that of Mr. Speck in certain key parts. These discrepancies include the time of day when the display allegedly fell, the number of bottles Mrs. Hickman removed from the display, and the facts surrounding the reporting of the incident to management personnel. Yet, all three of these witnesses, whose testimony as to the circumstances of the actual accident is unrebutted, agree that Mrs. Hickman did nothing to topple or destabilize the display. (On this record we are unable to determine why the jury rejected this testimony.)
Mr. Douglas Ford, a representative of Delta Beverage, contradicted the plaintiffs' description of the appearance of the display. He specifically denied that the display was constructed in the dangerous "pyramid" shape described by the plaintiffs. However, the defendants failed to put forth the testimony of any witnesses (such as the employee of Delta Beverage who was charged with maintaining the display or Albertson's assistant manager who was on duty on the evening in question) as to the condition of the Pepsi display immediately before or after the alleged accident in order to demonstrate their reasonable care in keeping the premises free of hazards. Mr. Ford testified that he was notified of the accident the next day. Rudolph Francis, Albertson's manager, testified that, to the best of his recollection, he first became aware of the incident three days after its alleged occurrence. Thus, the only employee testifying about the condition of the display was Mr. Speck. See LSA-R.S. 9:2800.6(B) and (C).
From the cold record, we cannot determine all of the relevant circumstances pertinent to the resolution of this matter. In view of the substantial conflicting evidence and numerous credibility calls presented in this record, we are convinced that the interests of justice would be best served by *1133 remanding for a new trial.[3]Savin v. Allstate Insurance Company, supra; Tabor v. Doctors Memorial Hospital, 501 So.2d 243 (La.App. 1st Cir.1986), appeal after remand, 554 So.2d 849 (La.App. 1st Cir.1989), reversed in part and affirmed in part, 563 So.2d 233 (La.1990); Moore v. Clark, 517 So.2d 293 (La.App. 1st Cir.1987).
Consequently, we remand this case to the trial court for a new trial.[4]

EXCLUSION OF TESTIMONY OF ALBERTSON EMPLOYEE
Although we are remanding the case for a new trial, we also address the plaintiffs' second assignment of error because it presents an issue which may be pertinent on retrial. In this assignment, the plaintiffs complain that the trial judge erred in excluding certain portions of the video deposition testimony of Mr. Speck. The trial court ruled that portions of the deposition, which related to the alleged instability of the Pepsi display, were inadmissible because they contained either opinion testimony or hearsay. Specifically, Mr. Speck expressed his personal opinions as to the height and safety of the display. He also testified as to some discussions among unnamed Albertson's employees to the effect that the display was dangerously built and too high.
Although the trial court limited Mr. Speck's testimony to exclude several of his personal opinions that the display was constructed in a dangerous fashion, the court did not remove all such statements. At least two other statements to this effect remained in his deposition. In an early portion of his testimony, Mr. Speck stated:
A.... In my opinion, which is just my opinion, I think the display was stacked very incorrectly and unsafe to stack a two-liter soda bottle that high with thatso much volume of display was very unprofessional [sic].
Later, the following exchange occurred:
Q. From your observation of the incident, do you have an opinion as to why well, specifically, what caused the display to tip over, what movement or action?
A. Yes. In my opinion, it was very poorly filled and very poorly constructed."
. . . . .
Q. So, do you know why it fell?
A. It was very poorly constructed and very poorly filled, like I stated.
Consequently, the error, if any, committed by the court in limiting Mr. Speck's opinions was clearly harmless.
The plaintiffs also contend that the court erred in failing to admit Mr. Speck's statements about comments allegedly made by fellow employees that the display was too high and too dangerous. They assert that these statements were not hearsay because they were statements of an employee of the party against whom they were offered (Albertson's) concerning a matter within the scope of his employment. LSA-C.E. Art. 801(D)(3)(a).
However, we find that the plaintiffs failed to lay a proper foundation for admission of these statements. The other "employees" are never named by Mr. Speck, thus making it impossible to verify whether such unnamed and unidentified persons were actually employed by Albertson's. Furthermore, the statements offered called for the opinions of these unnamed employees *1134 whose employment experience with grocery store displays is unknown. Also, see and compare the reasoning in the dissenting opinion in Hoffman v. Schwegmann Giant Super Markets, Inc., 572 So.2d 825 (La.App. 4th Cir.1990), writ denied, 576 So.2d 33 (La.1991).
Consequently, we find no merit to this assignment of error.

CONCLUSION
For the reasons assigned above, we reverse the judgment of the trial court and remand for a new trial. Costs of this appeal are to be assessed equally among the parties.
REVERSED AND REMANDED.

APPLICATION FOR REHEARING
Before MARVIN, SEXTON, NORRIS, LINDSAY and HIGHTOWER, JJ.
Rehearing denied.
NOTES
[1] In Davis v. Wal-Mart, Inc., 594 So.2d 557 (La.App.3d Cir. February 12, 1992), the court concluded that claims arising before September 1, 1990 and tried before that day but after July 12, 1988, are governed by the 1988 statute. Cases arising before September 1, 1990, and tried after that date fall under the rule of McCardie v. Wal-Mart, Inc., 511 So.2d 1134 (La. 1987), and cases arising on or after September 1, 1990, the effective date of the 1990 amendment, are governed by the 1990 statute. The present case arose in October 1988 and was tried in February and March of 1991. Thus, under the Third Circuit's interpretation, the McCardie case would control. However, we disagree and find that the 1988 statute is clearly applicable to our case.
[2] Although the jury was also instructed on strict liability, that instruction stated that, if the plaintiffs proved the three elements of strict liability (defect, defendant's custody of defective thing, and resulting injury), the defendants could only exculpate themselves from liability by showing that the harm was caused by victim fault or the fault of a third person. In the context of this case, fault of a third person could mean the conduct of other customers whose actions made the Pepsi display unstable. If the jury accepted the testimony of the plaintiffs and Mr. Speck, the burden then shifted to the defendants to prove that they had taken reasonable measures to maintain the display (and the premises) against such harm. The strict liability instruction did not provide guidance to the jury on this aspect of the case and thus was insufficient to cure the trial court's failure to instruct the jury in accordance with LSA-R.S. 9:28006.
[3] We are aware of the Supreme Court's recent writ grant in Willis v. Letulle, 583 So.2d 484 (La.1991), wherein it ordered the court of appeal to decide the merits of that case instead of remanding it to the trial court. A divided panel of the First Circuit subsequently interpreted this action as implicitly overruling Ragas, supra. See Willis v. Letulle, 1992 WL 46080, 597 So.2d 456 (La.App. 1st Cir. March 6, 1992). However, we agree with the concurring judge in Willis who stated that he did not necessarily agree that Ragas had been overruled. We do not believe that the Supreme Court intended to absolutely preclude remand where, as in this case, the issue of credibility so strenuously demands that a trier of fact observe the demeanor of the witnesses.
[4] The plaintiffs also asserted additional deficiencies in the jury instructions pertaining to the use of the expression "under all the circumstances." Those arguments are totally meritless and do not warrant full discussion.