616 So.2d 780 (1993)
Crystal ROLAND, Plaintiff-Appellant,
v.
Ignatius I. TEDESCO, III, et al., Defendants-Appellees.
No. 24,661-CA.
Court of Appeal of Louisiana, Second Circuit.
March 31, 1993.
Writ Denied June 18, 1993.
*781 Edmund M. Thomas, Shreveport, Benjamin P. Mouton, Baton Rouge, for plaintiff-appellant.
Cook, Yancey, King & Galloway, Shreveport by Samuel W. Caverlee and Cynthia C. Anderson, for defendants-appellees.
Before MARVIN, STEWART and BROWN, JJ.
STEWART, Judge.
This is an appeal by plaintiff, Crystal Roland, from a judgment in favor of defendants-appellees, Dr. Ignatius Tedesco and his insurer, Hartford Insurance Company, which rejected her medical malpractice claim for damages resulting from the death of her son, Royal Roland. For the reasons expressed, we affirm.

FACTS
Early in the morning of Monday, October 4, 1976, Royal Roland went to the emergency room at Willis-Knighton Memorial Hospital in Shreveport, Louisiana. The attending emergency room physician was Dr. Ignatius Tedesco.
Roland's chief complaints were of tremors from alcohol withdrawal and pain over his left eye from a recent surgery for cancer. After taking Roland's medical history and performing a physical examination, Dr. Tedesco diagnosed Roland as suffering from mild delirium tremens. Dr. Tedesco attempted to admit Roland to Willis-Knighton for treatment but he refused to be admitted because he could not afford it. Dr. Tedesco explained to Roland that he could be treated at LSU Medical Center, a state charity hospital, however Roland again refused. Dr. Tedesco then tried to have Roland transferred to the Pines Treatment Center, a substance abuse treatment facility, but he refused this option as well.
Dr. Tedesco observed that Roland's condition was worsening and concluded that, if Roland was not treated, he would go into severe delirium tremens which is fatal when left untreated. Dr. Tedesco gave Roland 4 ccs of Paraldehyde[1] for the tremors and Tylenol III for pain because Roland had said that he was allergic to tranquilizers commonly used to treat mild delirium tremens. Dr. Tedesco then wrote Roland a prescription for 200 ccs of Paraldehyde and Tylenol III to take on an outpatient basis.
Dr. Tedesco discharged Roland from the emergency room and instructed the nurse to arrange for a taxi to take him to a nearby motel so he could be in close proximity to the hospital if he had any problems. Also, Dr. Tedesco gave Roland instructions to return to the hospital if he experienced any problems. The entire examination and treatment in the emergency room lasted approximately two hours.
On October 6, 1976, Roland was found dead in his motel room. Dr. Willis Butler, *782 then Coroner for Caddo Parish, performed an autopsy on Roland and classified his death as an accidental overdose of Paraldehyde. Roland's mother, Crystal Roland, filed suit against Dr. Tedesco and his insurer, Hartford Insurance Company, after a medical review panel unanimously held that Dr. Tedesco had not breached the applicable standards of medical care in connection with Roland's death.
After a trial on the merits in 1992, the jury answered special interrogatories as follows:

Question 1.
Has the plaintiff established by a preponderance of the evidence, the degree of knowledge of skill possessed, or the degree of care ordinarily exercised by physicians licensed in Louisiana and actively practicing in a similar community or locale and under similar circumstances at the time Dr. Tedesco rendered medical services to Royal Roland?
YES &check; NO ___
If your answer to question 1 is "Yes", answer question 2. If your answer to question 1 is "No", do not answer any further questions, but have the foreman sign and date the verdict form and return to the courtroom.

Question 2.
Has the plaintiff established by a preponderance of the evidence that Dr. Tedesco either lacked the degree of knowledge or skill possessed, or the degree of care ordinarily exercised by physicians licensed in Louisiana and actively practicing in a similar community or locale and under similar circumstances at the time Dr. Tedesco rendered medical services to Royal Roland?
YES ___ NO &check; 
If your answer to question 2 is "Yes", answer question 3. If your answer to question 2 is "No", do no answer any further questions, but have the foreman sign and date the verdict form and return to the courtroom.
In conformity with the jury's findings, the trial court entered judgment in favor of defendants, Dr. Tedesco and Hartford Insurance Company, and against Crystal Roland. The plaintiff's motion for judgment notwithstanding the verdict was denied by the trial court and judgment was rendered in favor of the defendants.
On appeal, plaintiff presents the following issues for review:
I. Whether the jury committed reversible error when it concluded that a physician must know the indications, contra-indications, side effects and adverse reactions of a drug before he prescribes it, but then found no breach of this standard of care when Dr. Tedesco admitted he was not knowledgeable of the drug Paraldehyde when he prescribed it to Mr. Roland?
II. Whether the jury committed reversible error when it concluded that a physician cannot treat an active alcoholic patient, presently suffering from Delirium Tremens mild, with a prescription for multiple doses of the drug Paraldehyde (200 ccs) when the patient will be unsupervised either by health care providers or by responsible family or friends, but then found no breach of this standard when Dr. Tedesco admittedly prescribed 200 ccs when he knew Mr. Roland would be going back to a hotel room without any supervision at all?
III. Whether the jury committed reversible error when it concluded that a standard of care which allows a physician to prescribe 200 ccs of the drug Paraldehyde to an active alcoholic in withdrawal, without supervision, when he subjectively believes that the patient will take the medicine as directed, protects the patient against a reasonably foreseeable risk of injury or harm?
IV. Whether the record supports a judgment in favor of plaintiff finding that the defendant's negligence caused her damage resulting in the *783 wrongful death of her only child, Royal Roland?

LAW
An appellate court is bound to abide by the clearly erroneous/manifest error standard as set forth in Rosell v. ESCO, 549 So.2d 840 (La.1989); Lynch v. Hanover Insurance Co., 611 So.2d 121 (La.App. 5th Cir.1992). In Martin v. East Jefferson General Hospital, 582 So.2d 1272, 1277 (La.1991) when considering the factual findings made by the trial court, the court stated the following:
[I]f the trial court or jury's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106, 1112 (La.1990); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). We have instructed the appellate courts that where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. [Citation omitted.]
Although LSA-C.C.P. Art. 1811 sets forth the rules governing a motion for judgment notwithstanding the verdict (JNOV), the standards have been developed jurisprudentially. The JNOV presents the question of whether the jury verdict, as a matter of law, is supported by any legitimate or substantial evidence. A finding that the evidence was insufficient as a matter of law requires a determination that there was no valid line of reasoning and permissible inferences which could possibly lead rational men and women to the conclusion reached by the jury.
In applying this standard, the trial court may not substitute its judgment of facts for that of the jury and must consider all the evidence in the light most advantageous to the party in whose favor the jury verdict was rendered, giving to this party the benefit of every legitimate and reasonable inferences that could have been drawn from the evidence. Gibson v. Bossier City General Hospital, 594 So.2d 1332 (La.App. 2d Cir.1991); Scott v. Hospital Service District No. 1 of the Parish of St. Charles, 496 So.2d 270 (La.1986); Willis v. Louisiana Power & Light Company, 524 So.2d 42 (La.App. 2d Cir.1988), writ denied, 525 So.2d 1059 (La.1988). Therefore, our review is limited to whether manifest error was committed by the trial court in its denial of plaintiff's motion for judgment notwithstanding the verdict and entering judgment in favor of the defendants.
In a medical malpractice action against a physician, the plaintiff carries a two-fold burden of proof. The plaintiff must first establish by a preponderance of the evidence that the doctor's treatment fell below the ordinary standard of care expected of physicians in his medical specialty, and must then establish a causal relationship between the alleged negligent treatment and the injury sustained. LSA-R.S. 9:2794; Smith v. State through DHHR, 523 So.2d 815, 819 (La.1988); Hastings v. Baton Rouge General Hospital, 498 So.2d 713, 723 (La.1987). Resolution of each of these involves a determination of fact which should not be reversed on appeal absent manifest error. Housley v. Cerise, 579 So.2d 973 (La.1991); Smith, supra at 822; Rosell v. ESCO, supra.
The physician's conduct is evaluated in terms of reasonableness under the circumstances existing when his professional judgment was exercised. The physician will not be held to a standard of perfection nor evaluated with benefit of hindsight. Opinions from medical experts are necessary to determine both the applicable standard of care, and whether that standard was breached. It is for the trier of fact to evaluate conflicting expert opinions in relation to all the circumstances of the case. Gibson, supra; Stein v. Insurance Corp. of America, 566 So.2d 1114 (La.App. 2d Cir.1990), writ denied, 569 So.2d 984 (La.1990); Maxwell v. Soileau, 561 So.2d 1378 (La.App. 2d Cir.1990), writ denied, 567 So.2d 1123 (La.1990). Where there are contradictory expert opinions concerning compliance with the applicable standard of *784 care, the reviewing court will give great deference to the conclusions of the trier of facts. Bolton v. Louisiana State University Medical Center, 601 So.2d 677 (La.App.2d Cir.1992).

DISCUSSION
Initially, we note that appellant's issues are framed as conclusions which readily flow from the jury interrogatories. To the contrary, the conclusions set forth by appellant are not discernable from the two jury interrogatories quoted earlier in this opinion.
The first three issues relate to the jury's implied conclusions about the evidence, however, the actual jury interrogatories reproduced above did not require the jury to specify what it found to be the applicable standard of care 16 years ago when Roland was treated by Dr. Tedesco. Nevertheless, the jury answered in the affirmative that appellant satisfied her burden of proof in establishing the applicable standard of care. Likewise, the jury was not required to specify conduct which would or would not have been deemed a breach of that standard of care. Appellant does not complain about the trial court's general instructions to the jury regarding the standard of care owed by Dr. Tedesco, thus, absent demonstrable proof to the contrary, we presume that the jury followed the instructions of the court.
Appellant contends that prescribing 200 ccs of Paraldehyde on an outpatient was a breach of the applicable standard of care. In support of her contention, she offers the testimony of several medical experts, namely, Drs. Edward B. Morgan, Jr., Joe Ben Hayes and Carlo H. Tamburro.
Dr. Morgan, a medical expert in the field of general and emergency medicine, testified that usually Paraldehyde is prescribed in an hospital setting. He further stated that a failure to hospitalize would be a deviation from the applicable standard of care. Dr. Morgan, stated that 200 ccs of Paraldehyde on an outpatient basis posed a greater threat than to discharge the patient against medical advice (AMA). He stated also that a physician should hospitalize a patient suffering from delirium tremens. He stated further that a physician can treat a patient with delirium tremens on an outpatient basis if and only if, the physician administers one dose and instructs the patient to return for additional medication, if the patient refuses admission to the hospital.
Dr. Hayes, a medical expert in psychiatry and addictive medicine, testified that, given Roland's medical history, he as a physician, would not have in good conscience within the standard of care prescribed Paraldehyde on an outpatient basis. Dr. Hayes also stated that he would not trust a patient with Roland's history to take 200 ccs of Paraldehyde without supervision. Dr. Hayes stated that a physician should hospitalize a patient suffering from delirium tremens for treatment and observation. He further stated that a physician should not prescribe Paraldehyde on an outpatient basis unless it is under close medical or family supervision. Dr. Hayes testified that given the option of prescribing 200 ccs of Paraldehyde on an outpatient basis and discharging a patient AMA, he would discharge the patient AMA.
Dr. Tamburro, a medical expert in pharmacology and toxicology, testified that prescribing 200 ccs of Paraldehyde to be taken by a patient in a situation where the patient was not under close supervision by either medical staff or family supervision was not the appropriate treatment or the standard of care in 1976 or today. He opined that Dr. Tedesco's choice of treatment deviated from the known and accepted treatment of delirium tremens.
Dr. Tedesco countered this with his own testimony and that of two other medical experts, namely Drs. J.E. Smith and Robert Rushing, two of the physicians who were on the medical review panel in this case. The third member of the panel, Dr. Russell Rigby, was deceased at the time of trial.
Dr. Smith, a former medical expert in general medicine now practicing orthopedic surgery, testified that the evidence presented to the medical review panel in 1980 in this case did not support the conclusions that Dr. Tedesco failed to meet the applicable *785 standard of care. Dr. Smith conceded that it would have probably been safer to give a single dosage of Paraldehyde to Roland and to have the patient return to the hospital the next day for additional treatment.
Dr. Rushing, a medical expert in the field of family medicine, testified that the existence of the empty bottle of Paraldehyde (i.e., 100 ccs of Paraldehyde Roland had recently filled in Texas) presented to Dr. Tedesco by Roland in the Emergency Room supports his prescribing the drug on an outpatient basis. Dr. Rushing further stated that:
If the doctor had convinced himself that the man was familiar with the drug, knew how to take it, had gone over in detail with him the complications of taking the drug, warned him against taking it other than the way it was prescribed, I see nothing wrong with giving him a prescription.
Drs. Smith and Rushing indicated that Dr. Tedesco met the applicable standard of care on October 4, 1976 in prescribing 200 ccs of Paraldehyde on an outpatient basis to Roland.
Dr. Tedesco admitted on direct examination that on October 4, 1976, he did not consider himself knowledgeable in the use of Paraldehyde. However, he stated that after looking through the Washington Manual[2] and other medical literature, he considered he had done as much research as he could at the time Roland was in the emergency room. Exhibit P-9, the Washington Manual excerpt, provides a summary of Paraldehyde including information about usages, effects, dosages, taste, etc. and describes it as a relatively safe, quick acting drug often used in the treatment of the tremulousness following alcohol withdrawal.
Appellant argues and Dr. Tedesco conceded that the manual does not include any information about lethal dosages, symptoms produced by Paraldehyde overdoses or the addictive power of the drug. Plaintiff argues that, if Dr. Tedesco was not acquainted with all of the cited information about the drug, then he erred in prescribing it to Roland and should be liable for his death.
Dr. Tedesco testified on cross-examination that he concluded after taking Roland's history and performing a physical examination, that he was suffering from mild delirium tremens. Dr. Tedesco opined that if left untreated, it would be fatal. Dr. Tedesco further stated that after Roland refused to be hospitalized, he had no other alternative but to treat Roland on an outpatient basis because otherwise he would go into severe delirium tremens. Dr. Tedesco prescribed 200 ccs of Paraldehyde to take on an outpatient basis based on Roland's past successful usage of Paraldehyde and his statement that he was allergic to tranquilizers commonly used in the treatment of alcohol withdrawal.
An unsuccessful course of treatment is not per se an indication of malpractice. The doctor's conduct is evaluated in terms of reasonableness under the circumstances existing when his professional judgment was exercised. The physician will not be held to a standard of perfection nor evaluated with benefit of hindsight. Opinions from medical professionals are necessary to the determination of the applicable standard of care and the breach thereof. The views and opinions of these expert witnesses, though not controlling, are persuasive. It is for the trier of fact to evaluate conflicting expert opinions in relation to all the circumstances of the case. Gibson, supra.
In sum, the jury was faced with conflicting expert medical testimony in a case tried 16 years after Roland's death. Given the state of the trial record, we are unable to say that the jury verdict is clearly wrong. Likewise, we find no error in the trial court's denial of plaintiff's judgment notwithstanding the verdict.
*786 Because of our disposition of issue nos. 1-3, we pretermit any discussion of issue no. 4.

CONCLUSION
For the reasons stated above, the jury verdict in favor of defendants is affirmed at plaintiff's costs.
AFFIRMED.
NOTES
[1] Paraldehyde was once a commonly used drug in the treatment of alcoholics with delirium tremens. Paraldehyde was used for its hypnotic effect and prompt action as a sedative in controlling tremors due to alcohol withdrawal.
[2] The Washington Manual as referred to in the trial record is actually the MANUAL OF MEDICAL THERAPEUTICS, 21st Edition, Department of Medicine, edited by Drs. Edgar C. Boedeker and James H. Dauber; Little, Brown and Company Boston, 1974.