JzREMY CHIASSON, Judge Ad Hoc.
This is an appeal in a medical malpractice case which was tried before a jury and in which the trial court directed a verdict in favor of the defendant Dr. Charles W. Krieger at the close of the plaintiffs case. Finding that reasonable men could differ regarding whether plaintiffs evidence established the appropriate standard of care, we reverse and remand for a new trial on the merits.
FACTS
During the early morning hours on Saturday, June 17, 1989, Rosia P. Aultman cut off the top portion of the thumb of her right, dominant hand, while slicing breakfast ham with a meat sheer at a restaurant where she was employed as a cook. She was taken to the NorthShore Regional Medical Center in Slidell, Louisiana, where she was attended to by emergency room physician, Dr. Gerard Coulon.
Dr. Coulon had a difficult time stopping the extensive bleeding, for the thumb nail was sliced off close to the bottom of the fingernail. Although there was testimony that it is almost impossible to cut the nail off without exposing the bone, Dr. Coulon testified the bone below the severed thumbnail was not exposed when he treated Mrs. Ault-man. After using tourniquets, Dr. Coulon eatherized the wound, put two stitches in it, and then bandaged Mrs. Aultman’s hand up to her elbow. She had X-rays which showed the bone was not fractured.
When Dr. Coulon discharged Mrs. Ault-man, he instructed her to schedule an appointment with Dr. Krieger, an orthopaedic surgeon, for Monday morning, June 19,1989. He gave ‘her prescriptions for pain medication and for an antibiotic, Duricef 500 mg., twice a day for five days.
Mrs. Aultman contacted Dr.. Krieger around 9:00 a.m. on Monday, Juné 19, and ultimately saw him on that date around 1:00 p.m. One of her adult daughters accompanied her at that appointment.
Dr. Krieger inspected the wound and observed that the bone was exposed over the nail bed. He re-bandaged her hand with gauze and then an ace bandage and instruct *184 ed her to return to see him in one week. He did not warn her to return sooner if she noticed any problems, and he prescribed no additional antibiotics. He testified he asked the women about antibiotics and they told him they had “plenty.”
|3On Monday, June 26, 1989, when Mrs. Aultman returned to see Dr. Krieger, she was accompanied by another daughter Belinda, who is a Louisiana Practical Nurse (LPN). Dr. Krieger’s office notes reflect that Mrs. Aultman’s thumb exhibitéd dry gangrene and that she would require an amputation at the distal (first) joint.
Dr. Krieger instructed Mrs. Aultman to go to physical therapy the next day, but gave her no warnings concerning possible changes in her condition prior to her appointment time. When the physical therapist unwrapped Mrs. Aultman’s thumb, he immediately called Dr. Krieger. Mrs. Aultman was hospitalized and her entire right thumb was amputated later that day, June 27, 1989. The more extensive amputation was required because of severe necrotizing infection and gas (wet) gangrene in the thumb.
Dr. William Pusateri, the dissenting member of the Medical Review Panel, was called by the plaintiff as a witness at trial. Dr. Pusateri’s opinion was that there was a material issue of fact regarding Dr. Krieger’s liability which had to be resolved by the factfinder, specifically: (1) whether Mrs. Aultman’s bone was exposed in the emergency room or thereafter; and (2) whether there was a foul smell coming from her wound when Dr. Krieger saw her at the second office visit on June 26, 1989. Dr. Pusateri stated that if Mrs. Aultman’s bone was exposed, then Dr. Krieger should have treated Mrs. Aultman more aggressively; he should have had her return every two or three days after the initial visit on June 19, and he should have been taking cultures every couple of days.
Mrs. Aultman’s action against defendants Dr. Krieger and Dr. Coulon was tried before a jury on December 9, 1996. On December 10, at the close of her case-in-chief, the trial court granted Dr. Krieger’s, motion for a directed verdict and dismissed him from the case on the ground that plaintiff failed to establish through the expert testimony of Dr. Pusateri or otherwise the standard of care breached by Dr. Krieger.
Mrs.. Aultman’s case then proceeded to the jury against Dr. Coulon only. The jury rendered a verdict finding no negligence on the part of Dr. Coulon. The plaintiff did not appeal the judgment rendered pursuant to the jury verdict.
Thus, the only issue presented in this appeal is the propriety of the trial court’s granting the motion for directed verdict in favor of Dr. Krieger.
^DIRECTED VERDICT
A trial court has the option of granting a directed verdict in favor of a defendant at the close of the plaintiffs evidence. LSA-C.C.P. art. 1810. A directed verdict should be granted only when the facts and inferences point so strongly in favor of one party that the court believes reasonable people could not reach a contrary verdict. Hastings v. Baton Rouge General Hospital, 498 So.2d 713 (La.1986). The motion for directed verdict, like the motion for judgment notwithstanding the verdict, should be granted only when the evidence points so strongly and overwhelmingly in favor of the moving party that reasonable men could not reach different conclusions, not merely when there is a preponderance of evidence for the mover. Id. citing Scott v. Hospital Service District No. 1 of the Parish of St. Charles, 496 So.2d 270 (La.1986).
Thus, our task upon review of a directed verdict is to determine if reasonable men on the jury could have found in favor of plaintiffs; if the answer is “Yes,” we must reverse. Tabor v. Doctors Memorial Hospital, on rehearing, 501 So.2d 243 (La.App. 1st Cir.1987). Similarly to the trial court in the instant case, the trial court in Tabor granted a directed verdict on the ground that the standard of care was not proven. This court disagreed and reversed, noting several factual issues that should have been submitted to the jury.
The first issue in Tabor was whether the emergency room physician, should have admitted the young man, who later committed *185 suicide, to the psychiatric ward. Two doctors testified they were of the opinion the decedent- did not appear to be suicidal at the time he was in the emergency room, but two eye witness nurses felt his condition warranted admission. This court stated, “Thus, while reasonable men' on the jury could find that an emergency did not exist, the testimony of the nurses and the language of the findings of the medical review panel ... furnish ample basis for reasonable men to have held to the contrary.” Tabor, 501 So.2d at 246.
The sécond issue in Tabor was whether reasonable men could find that the suicide was caused by the failure of the doctor to admit him to.the psychiatric ward. This court noted that the decedent’s mother spent the day after he was denied admission on the night of July 4th trying to get him medical treatment, despite the fact that the defendant doctor had indicated to her that he did not consider the young man suicidal. This court stated, “If Andrew had secured medical treatment from another physician or hospital, he might not have committed Rsuicide. All these facts lead to differing analyses, depending on the viewpoints of reasonable men on the jury.... [Reasonable men on the jury could conclude that Andrew’s suicide was caused by failure to admit Andrew to the hospital.... The opposite view is equally tenable.” Tabor, 501 So.2d at 246.
We turn to our examination of the record in the instant case mindful of the principle that this court must always evaluate a directed verdict in light of the substantive law underpinning the plaintiffs claims. Moore v. Aetna Casualty & Surety Company, 454 So.2d 1273, 1277 (La.App. 2d Cir. 1984).
The defendant doctor in the instant case correctly states in brief that the plaintiff has a two-fold burden of proof: that the doctor’s treatment fell below the ordinary standard of care expected of physicians in his medical specialty, and that there is a causal relationship between the alleged negligent treatment and the injury sustained. Roland v. Tedesco, 616 So.2d 780 (La.App. 2d Cir.), writ denied, 619 So.2d 579 (La.1993):[2] However, as we have previously noted, preponderance of the plaintiffs evidence is not a consideration in evaluating the plaintiffs case, especially where the trial court has directed a verdict following the close of the plaintiffs case instead of at the close of all of the evidence, as was done in Tabor.
Standard of care: In written reasons for judgment, the trial court stated:
The Court granted the motion for directed verdict sought by Dr. Krieger for the following reasons.
******
Dr. Pusateri, an expert in the field of orthopedic surgery, testified as to what he would have done and what he felt Dr. Krieger should have done. Dr. Krieger also testified.
******
Dr. Pusateri refused to state that Dr. Krieger violated the standard of care. The plaintiff must probe further to establish what the expert feels is the ordinary standard of care, which was never established in this case, and then, whether the defendant doctor breached the standard of care.
The trial court then concluded that, looking at the evidence in the light most advantageous to the plaintiff, it could not find that the record supported a finding that the plaintiff had met the necessary burden of proof.
A recent opinion by the Louisiana Supreme Court clarifies the issue of whether a plaintiff can prevail in a medical malpractice action when she does not introduce an expert |6witness to testify as to the applicable standard of care, its breach, and causation. In Pfiffner v. Correa, 94-0924, 94-0963, 94-0992 (La.10/17/94), 643 So.2d 1228, the court held that the court of appeal was in error when it *186 stated that the absence of expert testimony by a plaintiff regarding a breach of the standard of care precludes success in a medical malpractice action. The supreme court stated that, as a general rule, a plaintiff can prevail when a defendant/physician or a defense expert testifies regarding the standard of care, and the objective evidence at trial is such that a lay jury can infer negligence from the facts. The Pfiffner discussion of the evidentiary requirements apply a fortiori in the instant case, because plaintiff did present the testimony of an expert orthopaedic surgeon, Dr. Pusateri.
A majority of Louisiana court of appeal cases have held that ... expert testimony is necessary. In other court of appeal decisions, however, the courts have stated that the standard of care for any particular community or locale, or specialty, is merely “best determined from the testimony of other experts in the field,” not absolutely required.
* * * * * *
We hold that expert testimony is not always necessary in order for a plaintiff to meet his burden of proof in establishing a medical malpractice claim.... [Tjhere are instances in which the medical and factual issues are such that a lay jury can perceive negligence in the charged physician’s conduct as well as any expert can, or in which the defendanVphysician testifies as to the standard of care and there is objective evidence, including the testimony of the defendant/physician, which demonstrates a breach thereof.
94-0992, pp. 8-10, 643 So.2d at 1233-1234.
The Pfiffner opinion also points out that the jurisprudence has recognized that there are situations in which expert testimony is not necessary. The court stated that expert testimony is not required where the physician does an obviously careless act, such as the failure to attend a patient when the circumstances demonstrate the serious consequences of the failure.
In the instant case the jury heard the testimony of Dr. Pusateri, Dr. Jerry D. McKenzie, Mrs. Atdtaian, her two daughters, and the defendant, Dr. Krieger.
Dr. Pusateri testified at trial that if Mrs. Aultman’s bone was exposed, then Dr. Krieger should have treated this patient more aggressively and had her come back more frequently. Dr. Pusateri stated that the aggressive -follow-up treatment was required of Dr. Krieger from the first time he saw Mrs. Aultman on June 19, 1989, if the bone was exposed. Mrs. Aultman’s daughter, Belinda, testified when she unwrapped her mother’s hand on the Saturday before her second visit with Dr. Krieger, the wound appeared gangrenous and had a foul smell. Dr. Krieger testified when he saw Mrs. Aultman on her second visit, she had dry Agangrene. Dr. Pusateri. also stated that when there is dry gangrene, there can be an underlying infection process going on which can escalate; thus a culture of the thumb should have been taken on June 26.
Regardless of the cause of the dry gangrene, reasonable men on the jury could have concluded that Dr. Krieger breached the standard of care by failing to have Mrs. Aultman return more often, by failing to take cultures, by failing to provide Mrs. Aultman and her daughters with instructions which would have alerted them to the dangers of gangrene. Furthermore, reasonable men on the jury could have concluded that Dr. Krieger’s failure to assure that Mrs. Aultman had antibiotics resulted in her running out of antibiotics shortly after his first visit with her. Thus, while reasonable men on the jury could find, that Mrs. Aultman’s bone was not exposed in the emergency room or thereafter, the testimony of Dr. Krieger that the bone was exposed furnishes ample basis for reasonable men to have found that it was exposed. Once that factual finding is made, all of the above noted testimony concerning standard of care and breaches thereof becomes relevant and satisfies the plaintiffs burden in that respect.
As to causation, the question is not whether a partial or entire thumb amputation could have- been avoided; instead, it is whether the defendant doctor’s negligence was a substantial cause of the amputation. The doctor’s negligence does not have to be the only cause, but a substantial contributing *187 cause. Hastings v. Baton Rouge General Hospital, 498 So.2d at 720. If Mrs. Ault-man’s wound had been monitered every two or three days, she might not have developed gangrene at all and her entire thumb, minus the nail, might have been saved. All these facts lead to differing analyses, depending on the viewpoints of reasonable men on the jury. Reasonable men on the jury could conclude that the serious consequences of the treatment of Mrs. Aultman, the amputation of her entire thumb, was caused by the failure of Dr. Krieger to attend his patient properly in light of the nature of her wound.
Accordingly, we hold the trial court erred in granting a directed verdict in favor of Dr. Krieger at the close of the plaintiffs case. We reverse the judgment and remand the case for a new trial. We assess all costs of this appeal to the appellee, Dr. Krieger.
REVERSED AND REMANDED.

. Both the trial court and the defendant cited this case but without making the distinction between Roland, in which a jury decided whether the plaintiff had satisfied her burden of proof by a preponderance of the evidence, and the instant case involving a directed verdict, wherein preponderance of the evidence is not a consideration, as we mentioned previously. Thus, the defendant's reliance on Roland is partially misplaced.