ARMSTRONG, Judge.
Defendant, Schwegmann Giant Supermarkets, Inc., “Schwegmanns”, appeals the trial court’s judgment finding that it was wholly liable for plaintiff, Lalla Pilet’s, slip and fall accident and its increase of the damage award. We affirm in part, and reverse in part.
On April 14, 1986 Lalla Pilet slipped and fell on a foreign substance located on the floor of Schwegmanns’ store. Mrs. Pilet testified that she was walking down the aisles looking at displays and all at once she slipped and fell. The area where Mrs. Pilet was walking was shiny and Mrs. Pilet testified that if there was anything on the floor a person could not see it if it was light because the floor was shiny. Tonia Thomas, who worked as a porterette for Schwegmanns, testified that after Mrs. Pi-let’s accident she was called to clean up the aisle in which Mrs. Pilet fell. Upon doing so, she saw that there was cooking oil on the floor.
Daniel Norton, another customer in the store who did not know Mrs. Pilet, was an eyewitness to Mrs. Pilet’s accident. He testified that Mrs. Pilet flew up in the air and crashed down on the ground. Immediately after the accident, Mrs. Pilet signed a “Loss Notice” which indicated that she was suffering pain on her right side. She saw her treating physician, Dr. Daniel Seltzer, approximately four days later who confirmed that Mrs. Pilet injured the right side of her body and lower back.
Mrs. Pilet filed suit against Schweg-manns for damages. The matter was tried before a jury and the jury found that Schwegmanns proximately caused Mrs. Pi-let’s injuries. The jury further found that Mrs. Pilet was 25% negligent in causing her own injuries. They awarded Mrs. Pilet $17,000.00 in physical pain and suffering as well as $10,000.00 in medicals. Accordingly, the trial court entered a judgment in the amount of $20,250.00 plus interest in favor of Mrs. Pilet. Mrs. Pilet then filed a mo *896 tion for JNOV or in the alternative a motion for additur and new trial. The motion was sought on both the issue of Mrs. Pi-let’s own negligence and on the issue of damages. The trial court granted JNOV and eliminated the 25% negligence which the jury attributed to Mrs. Pilet and assessed 100% fault against Schwegmanns. The trial court further increased the jury award and entered judgment against Schwegmanns in the amount of $85,000.00 plus interest and costs. Damages were itemized as follows: physical and mental pain and suffering, past and future — $30,-000.00; loss of enjoyment of life — $20,-000.00; permanent or partial disability— $15,000.00.
On appeal Schwegmanns argues that 1) the trial court erred in granting Mrs. Pi-let’s Motion for JNOV and eliminating the 25% negligence which the jury attributed to Mrs. Pilet; 2) the trial court erred in granting Mrs. Pilet’s motion for JNOV on the issue of damages and increasing the jury award; 3) the trial court erred in limiting the testimony of Schwegmanns’ expert witness, Dr. Joseph Michalski.
Schwegmanns maintains that the jury’s finding attributing 25% fault to Mrs. Pilet for her injuries should not have been disturbed by the trial court because there was substantial evidence of such quality and weight that reasonable and fair minded persons could have reached this conclusion. The evidence that Schwegmanns refers to is testimony by Schwegmann porterette, Tonia Thomas, that the liquid on the floor was approximately the size of a legal pad and the fact that Mrs. Pilet admitted that she was looking ahead and did not see where she was going. Additionally, Schwegmanns insists that Mrs. Pilet’s credibility was reduced in the eyes of the jury. They argue that the jury clearly did not believe that Mrs. Pilet’s rheumatoid arthritis was related to her fall and thus they may have believed that Mrs. Pilet should have seen the substance on the floor. Finally, Schwegmanns argues that the trial court erred in granting a JNOV because it may not substitute its factual judgment for that of the jury’s.
JNOV is proper when the facts and the inferences point so strongly and overwhelmingly in favor of one party that the court believes that reasonable men could not arrive at a contrary verdict. Robertson v. Penn, 472 So.2d 927 (La.App. 1st Cir.1985), writ denied 476 So.2d 353 (La.1985). Tonia Thomas’ testimony was that she did not remember how much oil was on the floor but that it might have been the size of a legal pad. This was contrary to Dan Norton’s testimony. He testified that he did not see the oil until after Mrs. Pilet fell and that it was not a big puddle but there were some small drops.
In self-service grocery stores, a multitude of items are displayed upon shelving along the aisles which entice customers to pass their eyes upon the displays rather than on the surface upon which they walk. Brown v. Winn-Dixie of Louisiana, Inc., 452 So.2d 685 (La.1984); Core v. Winn Dixie of Louisiana, Inc., 471 So.2d 240 (La.App. 1st Cir.1985) writ denied 476 So.2d 353 (La.1985).
Mrs. Pilet relies on Raymond v. Safeway Stores, Inc., 522 So.2d 1350 (La.App. 2d Cir.1988). In that case the court held that an elderly gentleman’s failure to scrutinize the floor in front of him in a supermarket was not negligence. The court further found that the plaintiff’s poor vision was not a cause of his fall when a person with good vision did not see the grape that plaintiff fell on either. The small, light green seedless grape was not necessarily conspicuous on the light-tinted, brown-speckled floor.
We agree with Mrs. Pilet. There is absolutely no evidence whatsoever that she was in any way at fault for her injuries. We find no error in the trial court’s entry of JNOV, eliminating the 25% negligence which the jury attributed to Mrs. Pilet.
Schwegmanns maintains that the court erred in increasing Mrs. Pilet’s damages because there was sufficient evidence for the jury to believe that Mrs. Pilet’s arthritis was not caused or aggravated by her fall. In fact it was pre-existing and longstanding.
*897 Schwegmanns argues that testimony from Dr. Mayfield, Mrs. Pilet’s general practitioner, establishes that the disease did exist prior to Mrs. Pilet’s fall in its store. Furthermore, Dr. Zelman testified that Mrs. Pilet’s condition was longstanding and severe. Dr. Zelman testified as to both degenerative and rheumatoid arthritis. Concerning degenerative arthritis, he stated that a person suffering it must have suffered trauma to that particular part of the body. Schwegmanns insists that since testimony by Mrs. Pilet and her eyewitness establishes that she did not fall on her knees but on her back and rear she suffered no trauma to the knees. Furthermore, Dr. Zelman testified that if there was direct injury to a knee the arthritis would become symptomatic right away and subside after a number of months. Mrs. Pilet did not complain of knee pain until 4 months after the accident. As to rheumatoid arthritis, there are no studies showing that trauma can aggravate or cause rheum-toid arthritis. Dr. Zelman stated if it was in the active process at the time Mrs. Pilet fell then her injury would have nothing to do with any subsequent spread of the injury-
Dr. Michalski testified as a rheumatologist that it was not probable an injury would aggravate a pre-existing, non-active rheumatoid arthritic condition. But if it did occur, he would expect it to appear very quickly, within a few days or a week. Also, he stated that if there was any aggravation it is not probable that it would appear in any joints other than those injured.
Finally, Schwegmanns argues that the trial court erred by disturbing the jury’s verdict. A jury verdict should only be increased if its award is lower than the lowest reasonable amount which is acceptable. And, the trial court can only raise the amount to the lowest reasonable amount. West v. Melancon, 507 So.2d 1250 (La.App. 4th Cir.), writ denied 514 So.2d 128 (La.1987), reconsideration denied 515 So.2d 442 (La.1987). Schwegmanns cites Jenkins v. Schwegmanns, 445 So.2d 1326 (La.App. 4th Cir.1984) to support its assertion that the jury award of $17,000.00 in general damages plus $10,000.00 in medicals approaches the highest amount that should have been awarded for Mrs. Pilet’s injuries.
The only evidence introduced that Mrs. Pilet had any complaints referable to her knees prior to her fall in Schwegmanns was the testimony of Dr. Mayfield, a general practitioner who had treated Mrs. Pilet for approximately 10 years, primarily for hypertension and stomach problems. Dr. Mayfield testified that on March 20, 1986, he examined Mrs. Pilet and noted slight swelling in her left knee, no redness and no inflamation appeared on the skin. He diagnosed Mrs. Pilet’s condition in the left knee as probably arthritis although he took no x-rays of her knee or other studies. He further testified that his diagnosis was a purely clinical judgment. Dr. Mayfield’s treatment of Mrs. Pilet for her left knee lasted one day; one week after he saw her for complaints to the left knee she no longer had any complaints. Dr. Mayfield further testified that in all his years of treating Mrs. Pilet she had never made any complaints of pain in her right knee and that the visit described above was the one and only time she had any complaints referable to her left knee.
Mrs. Pilet, her husband, and Shirley Brand all testified to the very active life that Mrs. Pilet led prior to her fall. Contrary to Schwegmanns’ assertion, there was no evidence that her arthritis was longstanding and there were no prior complaints whatsoever regarding the right knee. which is the knee she complained about immediately following her fall. The Loss Notice form which was signed by Mrs. Pilet immediately after her accident while still in Schwegmanns’ store indicates that she reported having pain in her right knee. The form further indicates that she fell on her right side and hip, not her back and rear as Schwegmanns contends. Dr. Seltzer’s office noted that Mrs. Pilet injured the right side of her body.
Mrs. Pilet was suffering from both degenerative and rheumatoid arthritis. None of the doctors dispute that trauma to a joint can cause degenerative arthritis which *898 was asymptomatic to become symptomatic. The evidence supports a finding that Mrs. Pilet’s fall caused her knees to become symptomatic whether that aggravation occurred due to pre-existing degenerative arthritis or rheumatoid arthritis or both.
On review, the quantum award will not be disturbed unless the jury abused its much discretion. Core v. Winn-Dixie of Louisiana, Inc., supra. Because Mrs. Pilet did not sustain injury to her left knee on the left side of her body there is no causal connection between those injuries and her slip and fall in Schwegmanns. Mrs. Pilet is only entitled to be compensated for the aggravation of her pre-existing condition, the injury precipitated by the accident, the pain and suffering and the permanent disability which this accident caused. See: Jenkins v. Schwegmanns, supra. We find that the trial court’s increase of the general damage award was clear error.
Mrs. Pilet’s medical expenses amounted to $9,610.48. The jury awarded no amount whatsoever for future medical expenses despite testimony from Dr. Seltzer that Mrs. Pilet will require surgeries to her knees amounting to at least $9,000.00 plus the cost of four weeks of hospitalization. We find no error in the trial court’s entry of the JNOV awarding Mrs. Pilet’s future medical.
Schwegmanns argues that the trial court abused its discretion in limiting Dr. Michalski’s testimony to a single issue, whether he believed that trauma could cause arthritis. It wanted to introduce his expert testimony on his review of Mrs. Pilet’s x-rays and his opinion regarding the testimony and findings of Dr. Seltzer.
Clearly in light of the fact that Schweg-manns had already called a rheumatologist who had actually treated Mrs. Pilet, Dr. Zelman, and since Dr. Michalski had never seen or examined Mrs. Pilet or taken a medical history from her, the court’s decision to limit Dr. Michalski’s testimony was not manifestly erroneous.
For the foregoing reasons, the judgment of the trial court is affirmed in so far as it found Schwegmanns wholly liable for Mrs. Pilet’s injuries and it increased the medical expenses from $10,000.00 to $20,000.00 to include future medicals. We reverse the trial court’s judgment increasing the jury’s award for physical pain and suffering from $17,000 to $30,000 and making awards for loss of enjoyment of life and permanent or partial disability. Mrs. Pilet is awarded a total of $37,000.00 plus interest and costs.
AFFIRMED IN PART, REVERSED IN PART.