^GRISBAUM, Judge.
This appeal concerns a jury verdict finding defendant (merchant) not negligent in a slip and fall incident. We affirm.

ISSUE

We are called upon to determine whether the “shifting of the burden” provision in La. R.S. 9:2800.6 was triggered from the factual scenario presented, thereby causing the jury’s finding of no negligence on the part of the merchant to be “clearly wrong.”

BASIC FACTS AND PROCEDURAL HISTORY

At approximately 5:00 p.m. on August 13, 1989, 40-year-old plaintiff, Pamela Bishop, slipped in a puddle of clear oily liquid while on the premises of defendant, Jack Eckerd Corporation d/b/a Eckerd Drug Company (Eckerd’s). After slipping but not falling, plaintiff notified the pharmacist, Ronald Rome, of the spill.
12Lisa Perilloux Forsythe, the assistant manager on duty at the time of the accident, had noticed the spill prior to the accident but had left the area to get towels to clean up the spill. When she returned to the spill, Mr. Rome informed her that plaintiff had slipped. It was discovered the spill resulted from a bottle of Worlds of Curls, a hair care product, that had been on the shelf. .
While plaintiff did not exhibit an obvious injury immediately after the slip, she began experiencing increasing pain in her neck and lower back later that night. Ms. Bishop filed suit on July 6,1990 seeking damages against Eckerd’s; its insurer, Traveler’s Company; Lisa Perilloux Forsythe, the on-duty assistant manager; and Ronald Rome, the on-duty pharmacist.[1] At the end of a four-day jury trial, the jury rendered a verdict against plaintiff finding that defendant was not negligent. Plaintiff appeals the jury verdict maintaining defendant did not rebut the prima facie ease she made for negligence pursuant to La.R.S. 9:2800.6.[2]
ANALYSIS — LIABILITY
The applicable version of La.R.S. 9:2800.6 provides specifically
Liability of a merchant for injuries sustained by a person while on the premises of the merchant
A. A merchant owes a duty to persons who use his premises to exercise reason *282 able care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.
B. In a suit for damages by a person who has suffered damages as the result of a hazardous condition while on the merchant’s premises, the person must prove that the accident was caused by a hazardous condition. isThe burden of proof then shifts to the merchant to prove that he acted in a reasonably prudent manner in exercising the duty of care he owed to the person to keep the premises free of any hazardous conditions.
C. In exculpating himself from liability under this Subsection, the merchant need not introduce the testimony of every employee of the merchant or any particular proportion thereof, but is only required to introduce the testimony of any employee shown to have actually created the hazardous condition and those employees and management personnel whose job responsibilities included inspection or cleanup of the area where the accident giving rise to the damages occurred.
D. “Merchant” means one whose business is to sell goods, foods, wares, or merchandise at a fixed place of business.
Additionally, the appropriate Jury Interrogatory in question is No. 1, “Was Eckerd (or an employee of Eckerd) negligent? Yes _ No __and the “No” was checked.
Our jurisprudence is replete in finding that, once the plaintiff proves a slip on a foreign substance while on defendant’s premises and the slip resulted in injury, the burden shifts to defendant to exculpate itself from the presumption that it was negligent. See Crandell v. Winn-Dixie Louisiana, Inc., 580 So.2d 967 (La.App. 5th Cir.1991).
Since the first Jury Interrogatory addressed the question of the merchant’s negligence, we must conclude that, after reading the record in its entirety, the jury apparently concluded the alleged injury sustained was not the result of the slip and fall in question with this merchant.
A chronology of Ms. Bishop’s health is necessary in order to determine the extent of her injuries directly relating to the Eckerd’s accident, as opposed to other sources. Plaintiff suffered accidents both before and after the Eckerd’s incident in 1989. In November 1974, plaintiff was involved in a skiing accident where she broke her coxxyx bone. In June 1984, she was involved in an automobile accident where she was rear-ended and suffered a neck and back injury. The neck and back injury from the accident caused her many problems. Throughout 1986 and 1987, plaintiff saw Dr. Charles Mary for neck and back pain. In 1988, she was referred by Dr. Mary to Dr. Ralph Gessner. Dr. Gessner Uordered an MRI, which revealed plaintiff had a herniated and bulging disc in her neck. Plaintiff sought second opinions from three different doctors. In her second opinion visit to Dr. Edward Connolly in 1988, plaintiff attributed her “flare up” pain to the 1984 car accident. She complained to Dr. Connolly of a tingling pain in her arms. When she sought a second opinion from Dr. Michael Carey, she reported pain in her right arm, which she described as “stroke-like”.
We note there is no evidence that plaintiff saw any doctors from 1988 until the Eckerd’s accident in August 1989, and, according to Ms. Bishop, she was relatively complaint free. In fact, Ms. Bishop continued to work. Within one week after the Eckerd’s accident, plaintiff was hospitalized for two weeks for neck and back pain. After being released, she was required to undergo physical therapy for seven to eight months. She did not return to work after being hospitalized and eventually lost her job.
On October 6, 1989, Ms. Bishop was involved in a car accident wherein she was rear-ended. She testified the accident aggravated her neck and back injuries. On November 20, 1989, she was hospitalized for four days. When she was released, she was given a TENS unit to help relieve the pain. On December 8, 1989, Ms. Bishop experienced another misfortune. She fell into a sink hole at St. Jude’s Hospital, which further aggravated her neck and back injuries.
In 1990, Ms. Bishop saw Dr. Edmund Landry for an independent medical evaluation in *283 order to collect Social Security disability wherein it was determined she was physically unable to work. In 1991, Ms. Bishop saw her regular physician, Dr. Mary, for stomach problems related to the amount of pain medication and muscle relaxers she was taking. Plaintiff was also referred to a psychiatrist, Dr. Oliver Sanders, because she was experiencing depression. However, as early as 1984, Dr. Mary was advised that plaintiff had a psychological overlay.
| sTowards the end of 1992, plaintiff saw Dr. Blatt, an ENT specialist, for dizziness. Plaintiff also experienced increased pain on her right shoulder and arm. She was referred to Dr. Charles Craighead, who diagnosed her with thoracic outlet syndrome. She sought second opinions from Dr. John Jackson and Dr. Michael Carey but returned to Dr. Craighead for surgery on June 3, 1993. The surgery required the removal of a rib and a five-day stay in the hospital.
The jury is the ultimate judge of credibility. After evaluating all of the medical evidence relating to plaintiffs injuries, the jury is free to accept or reject the opinion, in part or in whole, of any expert witness. Martin v: Travelers Ins. Co., 546 So.2d 958 (La.App. 3d Cir.1989) and Tabor v. Doctors Memorial Hosp., 501 So.2d 243 (La. App. 1st Cir.1986). In fact, the jury is free to accept or reject any testimony it does not find to be credible.
The jury was saturated with various medical testimony. Only the testimony of Dr. Gessner, plaintiffs orthopedic surgeon, assigned a percentage of plaintiffs health problems to the “slip and split” at Eckerd’s. He testified that 90 percent of Ms. Bishop’s injuries and aggravation of pre-existing injuries resulted from the Eckerd’s accident as opposed to the two subsequent accidents. Dr. Jackson, a neurosurgeon consulted by plaintiff, admitted that over time normal degenerative changes would take place considering Ms. Bishop’s previous injuries. Also, the record indicates there were no objective findings between plaintiffs pre-accident and post-accident status.
The jury had to make credibility determinations in order to decide if plaintiffs injuries were attributable to this accident. We must be mindful of our jurisprudential mandate that a plaintiff must prove by a preponderance of the evidence a causal connection between the accident and the injuries claimed. Where multiple accidents are involved, the tortfeasor is only liable for the direct and proximate results of his negligence. Johnson v. Masur, 493 So.2d 881 (La.App. 3d Cir.1986).
|sWe find the jury, in its capacity as “judge” of credibility, had a reasonable, factual basis to conclude that whatever injuries and damages this plaintiff suffered were not the result of this slip and fall incident. Ergo, as a matter of law, the statutory shifting of the burden was never triggered, and the cloak of “presumption of negligence” never attached to this defendant-merchant.
Giving great deference to the fact finder’s determination of credibility, we cannot say, in light of the record, the jury was clearly wrong in concluding defendant was not negligent. For the reasons assigned, the trial court’s judgment is hereby affirmed. All costs of this appeal are to be assessed against the appellant.

AFFIRMED.

. Ronald Rome was dismissed on a directed verdict immediately after plaintiff presented her case.

. La.R.S. 9:2800.6 was amended in 1990. However, the 1990 version is not retroactive. Since the accident occurred in 1989, the applicable version of La.R.S. 9:2800.6 is the pre-1990 version, which provides that, once plaintiff proves the accident was caused by a hazardous condition, the burden of proof then shifts to the merchant to prove that he acted in a reasonably prudent manner in exercising his duty of care.