665 So.2d 1252 (1995)
James WILSON and Sherry Wilson, Plaintiffs-Appellees,
v.
NATIONAL UNION FIRE INSURANCE COMPANY OF LOUISIANA and Hardee's Food Systems, Inc., Defendant-Appellant.
No. 27702-CA.
Court of Appeal of Louisiana, Second Circuit.
December 6, 1995.
*1256 Blackman Law Firm by Gordon N. Blackman, Jr., Shreveport, for appellant.
Peters, Ward, Bright & Hennessy by J. Patrick Hennessy, Shreveport, for appellee.
Before NORRIS and STEWART, JJ., and SAVOIE, J. Pro Tem.
NORRIS, Judge.
Both the plaintiffs, James and Sherry Wilson, and the defendant, Hardee's Food Systems Inc., appeal a judgment based on a jury verdict and the district court's grant of JNOV in this case arising from James Wilson's slip on the floor of a Hardee's restaurant. For the reasons expressed, we affirm in part, reverse in part and render.

Factual background
In October 1992 James Wilson, his wife Sherry, and several family members went for lunch at the Hardee's restaurant on Line Avenue in Shreveport. Wilson was at the time 36 years old and had been on total disability since sustaining work-related back injuries in 1983 and 1984. When he and his family were ready to leave the restaurant, Wilson picked up his tray and carried it toward the trash bin. He was walking behind his sister-in-law, Charlotte Lagrone. Neither Wilson, Ms. Lagrone, nor anyone else in his group noticed that the floor was damp or that a Hardee's employee was performing an after-lunch damp-mop in the area. Wilson testified that when he got near the trash bin, his left foot slipped perhaps 10-12", but he was able to avert a complete fall by catching himself with his right foot, which also slipped about 10-12". Ms. Lagrone testified that walking just a few steps in front of Wilson she also slipped without falling, but did not have time to warn him that the floor was wet. After the incident Wilson and his family noticed a "Caution: Wet Floor" sign on the floor near the front of the dining area, but it was actually located beyond the wet spot, from Wilson's vantage point. An eyewitness, Mary Sims, verified that the sign was on the other side of the wet spot from where Wilson was walking. Ms. Sims also testified that after Wilson slipped, she saw the floor was not "wet, wet," but damp and drying; Wilson's family members corroborated this.
A Hardee's employee, Debra Barham, testified that last thing before she got off shift at 2:00 p.m. she swept and dampmopped the dining area. She remembered Wilson's family; although they were rather loud she interrupted their conversation to tell them she was about to mop (no one in Wilson's group recalled this warning). She further testified that she damp-mopped with clear, hot water; this detail was verified by the store manager, Bob Burgoyne. Mr. Burgoyne added that it was actually company policy at the time to use a general purpose soap called Kadet TM for daily cleaning, but he felt this created a buildup so he instructed his staff to use clear, hot water. There was considerable testimony about the quality of tile used in the restaurant, the preferred placement of warning signs, and accident reporting procedures; these will be addressed later in the opinion.
Immediately after the incident Wilson walked to his truck to leave Hardee's, but realized his right hip was starting to hurt. His father-in-law, Rev. Adams, advised him to go back and file an accident report, which he did. Mary Fobbs, the store's assistant manager, took the information from Wilson and apparently advised him to go to Physicians and Surgeons Hospital for an examination.[1] Wilson did so, and when the pain and tingling in his right hip did not subside, he went to his orthopedic surgeon, Dr. Garrett. *1257 Dr. Garrett, it turns out, had previously diagnosed Wilson with avascular necrosis in the femoral heads of both hips. In March 1990 he had operated on Wilson, replacing his right hip; he released him three months later with a slight limp. A few days after the slip, Dr. Garrett thought Wilson had damaged a small nerve in the front of his thigh, and treated it conservatively, but when after six weeks Wilson began complaining of "popping" when he moved his thigh, Dr. Garrett suspected a partial dislocation of the implant. He performed two operations, ultimately removing Wilson's damaged right hip implant and putting in a new one (a "revision"). He testified that "the fall Mr. Wilson told me about" was probably the cause of the damage to the implant. While his right thigh was recovering, Wilson's left thigh began to give him problems; Dr. Garrett felt this was an acceleration of a pre-existing condition owing to the increased demands on his left hip while the right hip was healing from the revision. Dr. Garrett replaced Wilson's left hip in January 1994. Wilson testified that this operation was not completely successful and he expected having to replace the left hip again; Dr. Garrett, however, did not specifically project a revision.
Dr. Garrett testified that as a result of the implants Wilson is restricted against heavy lifting, jogging and repetitive, stressful activity to his hips. Wilson admitted he had been on total disability since 1984, having undergone two fusions and one decompression that left him in constant pain; however, he testified that his residual back pain was not as bad as the new pain in his hips. He added that the problems resulting from his slip at Hardee's have affected his marriage and made him "snappy" with his children and wife for small things.

Action of the trial court
The Wilsons filed the instant petition in April 1993, James seeking general and special damages, and Sherry claiming loss of consortium.[2] At trial in July 1994 the Wilsons introduced medical bills totaling $72,709.07, reflecting treatment and replacement of both hips after the accident. The parties vigorously discussed the proposed jury charge, which forms the basis of several of the assignments of error. In response to special interrogatories, the jury found that the condition of the floor posed an unreasonable risk of harm to Wilson, that Hardee's caused the condition, that Hardee's failed to exercise reasonable care, and that this conduct caused Wilson's damages. The jury also found Wilson comparatively negligent to the extent of 50%. The jury awarded past medical and hospital expenses of $80,000 but denied all future medicals. The jury further awarded $40,000 for past pain and suffering and $10,000 for past mental anguish, but denied all future general damages, loss of enjoyment of life and disability. The jury finally also denied Mrs. Wilson's claim for past lost wages and loss of consortium.
Wilson moved for a new trial or JNOV, urging three grounds: (1) the allocation of fault was improper; (2) general damages should have been at least $225,000; and (3) loss of consortium should have been awarded in the amount of at least $25,000. Hardee's also moved for JNOV, urging only that the special damages of $80,000 should be reduced to the $72,709.07 proved at trial.
After argument on the motions, the district court declined to change the allocation of fault, noting that reasonable jurors could have differed on that issue. The court then granted Hardee's motion for JNOV, reducing the past medical damages from $80,000 to $72,709.07. Turning to Wilson's motion, the court stated that any reasonable person would have found that he was going to need future medical treatment for his left hip; the court granted JNOV in the amount of $10,000 for this. Stating that "as a result of his injury Mr. Wilson was going to suffer a permanent disability, and it was something different and new from what he already had," the court added $20,000 for Wilson's disability and loss of enjoyment of life. The court finally added an award of $3,000 for Mrs. Wilson's loss of consortium, representing *1258 three months' time she missed working as a private-duty nurse while she tended her husband. Hardee's has appealed suspensively, and the Wilsons have answered the appeal.

Applicable law
Tort claims against merchants for slips and falls on their premises are regulated by statute, La.R.S. 9:2800.6. As amended in 1990 it provides in pertinent part[3]:
A. A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.
B. In a negligence claim brought against a merchant by a person lawfully on the merchant's premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition in or on a merchant's premises, the claimant shall have the burden of proving, and in addition to all other elements of his cause of action, that:
(1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable;
(2) The merchant either created or had actual or constructive knowledge of the condition which caused the damage, prior to the occurrence; and
(3) The merchant failed to exercise reasonable care.
Under this statute, the presence of a foreign substance on the floor does not create a presumption of negligence. Welch v. Winn-Dixie La. Inc., 94-2331 (La. 5/22/95), 655 So.2d 309; Perez v. Wal-Mart Stores Inc., 608 So.2d 1006 (La.1992). However, prior formulations of the law of slip-and-fall did indeed establish a presumption of negligence upon proof of a foreign substance on the store's floor and that it caused the plaintiff to fall and sustain injury. Kavlich v. Kramer, 315 So.2d 282 (La.1975); McCardie v. Wal-Mart Stores Inc., 511 So.2d 1134 (La.1987); La.R.S. 9:2800.6 prior to the 1990 amendment.[4]
The statute has been strictly construed not to apply to falling merchandise cases or to non-merchant defendants. See, e.g., Edwards v. K & B Inc., 26,002 (La.App. 2d Cir. 8/17/94), 641 So.2d 1040; Retif v. Doe, 93-1104 (La.App. 4th Cir. 2/11/94), 632 So.2d 405; Reynold v. St. Francis Medical Center, 597 So.2d 1121 (La.App. 2d Cir.1992). However, the statute has been applied where the plaintiff slipped but did not actually fall to the floor. Bishop v. Jack Eckerd Corp., 93-1043 (La.App. 5th Cir. 5/11/94), 638 So.2d 280, writ denied 94-1406 (La. 9/16/94), 642 So.2d 198; Cobb v. Wal-Mart Stores Inc., 93-49 (La.App. 5th Cir. 8/26/93), 624 So.2d 5.
Adequate jury instructions are those that fairly and reasonably point up the issues and provide correct principles of law for the jury to apply to those issues. Fuller v. United States Aircraft Ins. Group, 530 So.2d 1282 (La.App. 2d Cir.), writ denied 534 So.2d 444 (La.1988), cert. denied 490 U.S. 1046, 109 S.Ct. 1954, 104 L.Ed.2d 424 (1989); Lincecum v. Missouri Pacific R. Co., 452 So.2d 1182 (La.App. 1st Cir.), writ denied 458 So.2d 476 (1984). The trial court is not required to give the precise instructions submitted by the litigants; it need only give instructions that properly reflect the applicable law and adequately convey the issues to the jury. La.C.C.P. art. 1792; Fuller v. United States Aircraft, supra.
Usually the factual findings of the jury are accorded great weight and may not be disturbed by the appellate court in the absence of manifest error. Rosell v. ESCO, 549 So.2d 840 (La.1989). However, when the verdict is based on jury instructions that are *1259 faulty in a critical regard, the verdict is tainted and not entitled to a presumption of regularity. Gonzales v. Xerox Corp., 320 So.2d 163 (La.1975); Fuller v. United States Aircraft, supra. Not every deficient jury instruction will mandate a de novo review. Ragas v. Argonaut Southwest Ins. Co., 388 So.2d 707 (La.1980). Appellate courts exercise great restraint before overturning a jury verdict on the suggestion that the instructions were so erroneous as to be prejudicial. Doyle v. Picadilly Cafeterias, 576 So.2d 1143 (La.App. 3d Cir.1991). The standard of review for the appellate court in determining whether an erroneous jury instruction tainted the verdict involves a comparison of the degree of the error with the instructions as a whole and the circumstances of the case. Gunn v. Amica Mut. Ins. Co., 611 So.2d 805 (La.App. 3d Cir.1992), writ denied 613 So.2d 999 (La.1993). The pertinent inquiry is whether the erroneous jury instruction misled the jury to such an extent that the jury was prevented from doing justice. Kessler v. Southmark Corp., 25,941 (La.App. 2d Cir. 9/21/94), 643 So.2d 345.
The JNOV is provided for in La. C.C.P. art. 1811. The criteria for granting JNOV are set forth in Anderson v. NOPSI, 583 So.2d 829 (La.1991):
A JNOV is warranted when the facts and inferences point so strongly and overwhelmingly in favor of one party that the court believes that reasonable men could not arrive at a contrary verdict. The motion should be granted only when the evidence points so strongly in favor of the moving party that reasonable men could not reach different conclusions, not merely when there is a preponderance of evidence for the mover. If there is evidence opposed to the motion which is of such quality and weight that reasonable and fairminded men in the exercise of impartial judgment might reach different conclusions, the motion should be denied[.] In making this determination, the court should not evaluate the credibility of the witnesses, and all reasonable inferences or factual questions should be resolved in favor of the non-moving party.
On review, the appellate court must first determine if the trial court erred in granting the JNOV; such determination is made by the same criteria as the trial judge used in granting the motion. Id.; Drury v. American Honda Motor Co., 93 1414 (La. App. 1st Cir. 12/22/94), 659 So.2d 738.
Under the manifest error rule, the appellate court reviews the record not to determine whether the jury's findings were right or wrong, but whether its conclusion was reasonable. Stobart v. State, through DOTD, 617 So.2d 880 (La.1993). Even when the reviewing court feels its own evaluations and inferences are more reasonable than the factfinder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed where conflict exists in the testimony. Rosell v. ESCO, supra. Only when documents or objective evidence so contradict a witness's story, or the story itself is so internally inconsistent or implausible on its face that a reasonable factfinder would not credit the witness's story, may the appellate court find manifest error. Id. The factfinder also has broad discretion in fixing damages which are "insusceptible of precise measurement." La.C.C. art. 1999; Hae Woo Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993).
The jury's award of general damages for pain, suffering and mental distress is also subject to the "much discretion" rule. La.C.C. art. 1999; Hae Woo Youn v. Maritime Overseas Corp., supra. The finding of abuse of much discretion must be based on the particular injuries sustained and their effects under the particular circumstances on the particular injured person. Reck v. Stevens, 373 So.2d 498 (La.1979). After such determination is made, the appellate court may raise (or lower) the award to the lowest (or highest) amount reasonably within the fact finder's discretion. Coco v. Winston Industries Inc., 341 So.2d 332 (La.1976).

Discussion: The 9:2800.6 instruction
By its first assignment Hardee's urges the district court erred in instructing the jury to presume negligence, as set out in McCardie v. Wal-Mart, supra, and in the prior version of R.S. 9:2800.6, but contrary to the amended *1260 version. Hardee's correctly argues that any slip or fall after September 1, 1990 is regulated by the 1990 amendment, which does not create a presumption of negligence. Perez v. Wal-Mart, supra. Hardee's concedes that the instructions were partially correct in that they begin by quoting the statute; however, it argues the court erred by following the correct charge with this erroneous instruction derived from McCardie:
In proving this case, plaintiffs are required to show the following facts:
(1) That a foreign substance created a hazardous condition on Hardee's floor;
(2) That James Wilson slipped on, or onto the foreign substance;
(3) That the foreign substance caused James Wilson to slip and suffer injury.
After plaintiffs have established the occurrence of the above-mentioned facts, an inference of negligence arises and the burden shifts to the defendants to free themselves from the presumption that they were negligent. Defendants may free themselves from the presumption of negligence.
Hardee's concludes that aided by the presumption of negligence, the jury found Hardee's responsible for 50% of Wilson's injuries; absent the presumption, the jury would not have found Hardee's negligent.
Hardee's legal contention is correct: the 1990 version of 9:2800.6 applies to this case, the plaintiffs are required to prove the elements listed in the statute, and there is no presumption of negligence on the defendant's part. Welch v. Winn-Dixie La., supra; Perez v. Wal-Mart, supra. For the district court to include an instruction based on superseded law is legally wrong.
Not every error of jury instructions, however, will require the appellate court to vacate the verdict and reconsider the evidence de novo. Ragas v. Argonaut Southwest Ins., supra. In fact, the appellate court will exercise great restraint before disregarding the verdict on the basis that the jury instructions were prejudicially erroneous. Doyle v. Picadilly Cafeterias, supra. We look to the instructions as a whole and to the totality of the circumstances to determine whether the faulty instruction tainted the verdict. Gunn v. Amica, supra. This is not a situation where the district court completely omitted a necessary instruction or gave a completely wrong charge; such cases usually result in de novo review. Cf. McDonough v. Royal Sonesta, 626 So.2d 438 (La.App. 4th Cir.1993); Walker v. Babcock Industries Inc., 582 So.2d 258 (La.App. 1st Cir.1991). Before using the contested instruction, the district court quoted from 9:2800.6, omitting only the reference to "actual or constructive notice," and including "the merchant created the condition," which is pertinent to the facts presented. The court then reiterated the substance of the statute in outline form:
In order for plaintiffs to receive a favorable verdict from this jury, they must prove by a preponderance of the evidence, each of the following elements:
(1) That the condition at defendant's, Hardee's Food Systems Inc.'s, presented an unreasonable risk of harm to the plaintiff, James Wilson, and that risk of harm was reasonably foreseeable.
(2) That the defendant, Hardee's Food Systems Inc., created the condition which caused the damage to plaintiff, James Wilson, prior to the occurrence.
(3) That the defendant, Hardee's Food Systems Inc., failed to exercise reasonable care; and
(4) That the damage to plaintiff, James Wilson, was caused by defendant's, Hardee's Food Systems Inc.'s, failure to exercise reasonable care. R. p. 683.
The incorrect instruction follows, but it comes after two correct statements of the applicable law. The verdict form also correctly tracks 9:2800.6, containing no mention of the presumption of negligence. R. pp. 110-111. These factors, we feel, minimize the chance of confusing or misleading the jury. Further, it is significant that the jury allocated a significant degree of fault to Wilson; despite the alleged prejudicial effect of the contested instruction, the jury was obviously not misled into overburdening Hardee's with a presumption of negligence.
*1261 In sum, the inclusion of pre-1990 law in this instruction was legally wrong and, in another case, might well mandate overturning the verdict and reviewing the evidence de novo. However, the special circumstances noted above preclude us from finding that the jury was misled to the extent of preventing it from doing justice on the issue of fault. Kessler v. Southmark Corp., supra. Hardee's first assignment does not present reversible error.
Wilson has also contested the same instruction; by his first assignment he urges the district court erred in applying 9:2800.6 at all because Wilson only slipped and did not fall to the floor. In support he urges that the statute is narrowly construed. See, e.g., Hickman v. Albertson's Inc., 598 So.2d 1128 (La.App. 2d Cir.), writ denied 600 So.2d 618 (La.1992). We are aware of no case, however, that distinguishes between a fall to the floor and a slip that does not result in a fall to the floor; in fact, two courts have explicitly applied the statute to mere "slips." Bishop v. Jack Eckerd Corp., supra; Cobb v. Wal-Mart Stores Inc., supra. This court has stated in dictum that the statute applies to slips and falls. Edwards v. K & B Inc., 26,006 at p. 8, 641 So.2d at 1045. At trial, the district court stated that "a slip is the closest thing I know to a fall," and rejected Wilson's proposed instruction because the distinction was too tenuous. R. pp. 612-612. This is not plainly wrong; the district court properly refused to exclude the 9:2800.6 charge. This assignment does not present reversible error.

Other jury instructions
By his second and fifth assignments, Wilson urges the district court erred in refusing two of his requested jury instructions. The first was the proposed charge that a customer in a grocery store or a fast-food restaurant has a diminished duty to inspect the floor before him. In support he cites Kavlich v. Kramer, supra, and argues that even after the enactment of 9:2800.6 a patron in a self-service store "reasonably assumes that the aisles are clear for passage and focuses on the displayed merchandise and not the pathway." Perez v. Wal-Mart, supra. He further argues that this rule applies to fast-food restaurants where the customer is required to carry his own tray, thus preventing him from seeing the floor. Thompson v. Stalnaker's Restaurant Inc., 93-1447 (La.App. 3d Cir. 6/1/94), 640 So.2d 733, writ denied 94-1799 (La. 10/14/94), 643 So.2d 165. Wilson concludes that this omission was of such a magnitude as to deprive the verdict of its presumption of correctness and mandate a de novo review of the evidence. Gonzales v. Xerox Corp., supra.
The requested jury charge was derived from Marshall v. A & P Food Co. of Tallulah, 587 So.2d 103, 110 (La.App. 2d Cir.1991):
It is incumbent on the defendant to affirmatively show that the plaintiff was comparatively negligent. The law does not require a * * * customer to devote his attention meticulously to the floor in front of him as he walks. In a self-service store, a patron has a diminished duty to see that which should be seen because his attention is presumed to be attracted to the advertised goods on the shelves.
The instruction actually given included a general statement that the burden was on Hardee's to allege the defense of comparative negligence and establish, by a preponderance of the evidence, that Wilson was negligent and that such negligence was one of the causes of any injuries and subsequent damages he sustained. R. p. 685. This general statement is correct. Wilkinson v. Hartford Acc. & Indem. Co., 411 So.2d 22 (La.1982); Smith v. Jack Dyer & Asso. Inc., 633 So.2d 694 (La.App. 1st Cir.1993). However, we find that the district court erred in not including the special "diminished duty" charge, as it was obviously applicable to this case.
Despite this legal error, the jury had before it certain facts which, in our view, minimized the risk of being misled and impeded from doing justice. Wilson was admittedly carrying a tray when he slipped, and thus could not see the floor immediately ahead of him, but there is no evidence that he was required to return his tray to the trash bin. Also, he testified that because of his first hip replacement his doctor had instructed him to be extremely careful when *1262 walking. R. p. 432. Further, the hazard was a fairly large damp area and well ahead of him as he started toward the trash bin, not a small spill or a particle of food requiring "meticulous" attention; seeing Ms. Lagrone slip just a few paces ahead probably also did not require close scrutiny. Because it was given these facts and a proper general charge, we do not find the omission of the requested charge to be reversible error. Kessler v. Southmark Corp., supra.
By his fifth assignment Wilson urges the court erred in failing to instruct the jury properly as to the defendant's liability for aggravating a pre-existing condition. Wilson contests the following instruction:
Defendants take the plaintiff as they find him and the defendants are responsible only for the consequences of their negligence or fault, although injury may be greater because of a prior condition of the plaintiff. The defendants are not responsible for conditions that are not the consequence of their negligence or fault. When the defendants' negligent actions aggravate a pre-existing condition, defendants must compensate the plaintiff for the full extent of the aggravation. R. pp. 685-686 (emphasis added).
The law is very well settled that the defendant takes his victim as he finds him and is responsible for all natural and probable consequences of his tortious conduct. Lasha v. Olin Corp., 625 So.2d 1002 (La.1993); Perniciaro v. Brinch, 384 So.2d 392. It is equally well settled that the plaintiff bears the burden of proving a causal relationship between the accident and the injuries complained of. American Motorist Ins. Co. v. American Rent-All, 579 So.2d 429 (La.1991). When a defendant's tortious conduct aggravates a pre-existing condition, the defendant must compensate the victim for the full extent of the aggravation. Id.; Lasha v. Olin Corp., 625 So.2d at 1006.
The instant jury instruction is admittedly not a verbatim recital of the language from Lasha and Perniciaro, supra. However, those cases make it clear that the defendant is liable for the aggravation of the plaintiff's condition, not all pain, suffering or disability the plaintiff may suffer after the tortious act. The district court's formulation combines the concept of "extent of aggravation" with that of "all natural and probable consequences" which appear in the cases. On at least one occasion, the Fourth Circuit has similarly combined the notions by stated the plaintiff "is only entitled to be compensated for the aggravation of her pre-existing condition[.]" Pilet v. Schwegmann Giant Supermarkets, 559 So.2d 894, 898 (La.App. 4th Cir.1990). Under the circumstances, we do not consider this jury charge so irregular as to prevent the jury from doing justice. Kessler v. Southmark Corp., supra.
In sum, none of the challenges to the jury instructions are such as would deprive the verdict of its presumption of regularity. The jury's findings will therefore be regulated by the manifest error rule. Rosell v. ESCO, supra.

Allocation of fault
By his third assignment Wilson urges that, even assuming he was negligent at all, the jury assigned him too much comparative negligence. The thrust of the argument, based on McCardie v. Wal-Mart, supra, is that once Wilson proved that he slipped on a wet, damp, slippery floor, the defendants had the burden to exculpate themselves from the presumption of negligence. Br., 9. For reasons already discussed, the law of McCardie does not apply to this case. The appropriate analysis follows R.S. 9:2800.6, and the jury's findings are regulated by the manifest error rule. Wilson cites several facts which, he contends, absolve him of liability.
First he cites the testimony of his own family members and of Ms. Sims to the effect that they did not see the "Caution: Wet Floor" sign until after Wilson slipped. The evidence is somewhat conflicting but it tends to show that a sign was present, yet placed on the opposite side of the wet spot from where Wilson and his family were sitting. Wilson's safety expert, Michael Frenzel, testified that for the sign to be effective, it had to be proximate to the hazard, preferably in front of the wet spot. R. pp. 311-313. Mr. Frenzel also admitted, however, that he could see a sign some 10 to 15 feet ahead, *1263 and this sign, even though it was past the wet spot, was within 15 feet. R. p. 340. Hardee's expert, Mark Pinson, testified that the sign should have been visible from where Wilson was sitting. R. p. 548. In short, there was sufficient evidence to permit a finding that the sign was in place, Wilson should have seen it, and his failure to do so was comparative fault.
Wilson next argues the failure of any Hardee's employees to verbally warn him about the wet floor should absolve him from comparative fault. The testimony is in direct conflict. Nobody at Wilson's table recalled anyone giving them such a warning; but Debra Barham, the Hardee's hostess, testified that she interrupted their loud conversation to advise them she was about to mop. R. p. 440. On this record the jury had a reasonable basis to find that Wilson disregarded an oral warning.
Wilson next argues that Hardee's violated its clean-up procedure by bringing a mop bucket into the customer area during operating hours and sweeping while customers were present. Mr. Burgoyne, the store manager, concedes this. R. p. 477. These points serve to establish Hardee's liability for failure to exercise reasonable care under 9:2800.6B(3). However, Wilson does not show how these deficiencies absolved him of his own duty of reasonable care and to see what could be seen.[5]
Finally, Wilson argues that the tile on Hardee's floor was unreasonably dangerous when wet. The experts discussed the coefficient of friction of clean and dirty Dal-Tile TM at great length. Although there is no national standard for slip resistance, both experts testified that the industry standard among safety experts is that a coefficient of friction (represented by e) of .5 is the limit of safety; lower than .5 is dangerous, but higher is safe.[6] Mr. Pinson visited the store and used an articulated strut testing device to measure the floor's slip resistance. He found that immediately after mopping with clear water, the floor's e = .45, or dangerous. However, after five minutes he found e =..575, relatively safe, and after 15 minutes, the floor was completely dry and e = .8, safe. Ms. Barham testified that the accident occurred some 20 minutes after she warned Wilson that she was about to mop; it is not clear, however, how much time had elapsed between the actual mopping and the accident. Wilson's expert, Mr. Frenzel, testified that because Hardee's used only clear water for spot cleaning, there was likely a grease buildup which clogged the pores in the tile and made it more slippery. R. pp. 314-317. However, when he visited the store some five months after the accident and examined the floor by scraping it with his fingernails, he picked up no greasy residue. R. p. 346.
Faced with this conflicting evidence, the jury could reasonably have found that Hardee's floor was wet and posed an unreasonable risk of harm, but that Wilson was not attentive enough to the "Caution: Wet Floor" sign, the oral warning, the employee who was mopping nearby, and to his sister-in-law who slipped just seconds before him, thus justifying the imposition of comparative fault. The jury could also have found that the floor, though wet, was only moderately slippery and that despite its breach of company cleaning policy, Hardee's had partially satisfied its duty of reasonable care by installing relatively slip-resistant tile. Although as a factfinder we may well have assigned less fault to Wilson, we are simply unable to declare manifestly erroneous a verdict that found him 50% comparatively negligent. This assignment of error lacks merit.

Evidentiary questions
By its second assignment, Hardee's contests the admission of certain testimony at trial. At oral argument counsel for Hardee's conceded that these issues are advanced to aid the court in the event of de novo review or to instruct the district court in the event of a remand. Since the jury *1264 instructions were not found to mandate either of these remedies and review is for manifest error, we will address these arguments only briefly. First Hardee's contends that evidence of the company's accident reporting procedure was irrelevant under La. C.Ev. art. 402, and served only to prejudice Hardee's in the jury's mind. We agree that Hardee's procedure of throwing away the written accident report within 24 hours after it was phoned to the home office tends neither to prove nor disprove either party's negligence in this accident. C.Ev. art. 401. Nevertheless it may have served to impeach the credibility of Hardee's employees, who had no writings with which to refresh their memories prior to trial. C.Ev. art. 612C. The district court's action was not reversible error.
Hardee's next urges that testimony about subsequent remedial measures was inadmissible under La.C.Ev. art. 407, and that testimony to this effect was prejudicial. The argument is valid; however, the substance of the "remedial" measure was that shortly after this accident, Hardee's home office dropped the requirement for using Kadet TM for daily damp-mopping, and now recommends clear, hot water. R. p. 506. Since the change in company policy vindicates Mr. Burgoyne's prior conduct, we perceive no prejudicial error in admitting this testimony.

General damages
By his fourth assignment Wilson urges that after properly granting his motion for JNOV on certain issues, the district court erred in failing to reassess independently Wilson's general damages and perform a de novo review. Wilson suggests that for his medical treatment, pain, agony and disability, all resulting from the accident, an award of at least $225,000 would be appropriate. Under the appropriate standard of appellate review, we conclude that the court's award of general damages is abusively low and must be raised to the lowest affirmable amount.
Wilson's first contention is that once the district court granted JNOV on the issues of future medical expenses, disability and loss of consortium, the court erred in not also granting JNOV on general damages. In Chambers v. Graybiel, 25,840 (La.App. 2d Cir. 6/22/94), 639 So.2d 361, writ denied 94-1948 (La. 10/28/94), 644 So.2d 377, this court held that an inconsistent jury verdict must be read as a whole, to produce a judgment that is just, legal and proper on the record. In Chambers, the jury answered interrogatories by stating that neither defendant's conduct caused the plaintiff's damages; however, the jury also allocated fault between the defendants, awarded special damages and denied general damages. We held that the inconsistent responsesrejecting causation but awarding damageswould have to be construed as actually finding causation. We also held that it was inconsistent to award special damages but completely deny generals. Sumrall v. Sumrall, 612 So.2d 1010 (La.App. 2d Cir.1993); Odendahl v. Wild, 418 So.2d 36 (La.App. 4th Cir.1982); see also Brantley v. General Motors Corp., 573 So.2d 1288 (La. App. 2d Cir.), writ denied 577 So.2d 17 (La. 1991).[7] We further held that JNOV was the proper procedural device to correct these inconsistencies. We did not, however, hold that just because the district court finds a jury error that requires JNOV as to one element of damage, the court must grant JNOV as to any or all other elements of damage. Rather, JNOV is warranted only when the district court finds that reasonable men must reach a verdict different from the jury's. Anderson v. NOPSI, supra. Denial of the motion is discretionary and should not be disturbed absent an abuse of discretion. Gibson v. Bossier City Gen'l Hosp., 594 So.2d 1332 (La.App. 2d Cir.1991).
We have closely examined the instant record and are constrained to find that the jury abused its discretion in the award of general damages. Despite his prior disability and pain, this record is abundantly clear that Wilson sustained a significant period of very serious pain as a result of this accident, *1265 and continues to endure a more pain than before.
The nature and extent of Wilson's post-accident pain is not really contested. He began to hurt immediately after he slipped; by the time he saw Dr. Garrett on October 29, he had severe pain in his artificial right hip and tingling in the front of his right thigh. Although there was no obvious fracture, Dr. Garrett suspected nerve damage, which he treated conservatively. By December 1, the hip was "popping," suggesting a partial dislocation. A special X-ray showed the artificial hip's femoral component was loose. After excluding Wilson's prior back condition as a cause of the hip pain, Dr. Garrett scheduled him for a nerve decompression surgery in February 1993; this yielded relief for about three weeks. In April Dr. Garrett removed the old implant and put in a new one. Within five months Wilson reached maximum improvement; he testified that he has no more pain in the right hip. However, after he recuperated he began to notice pain in his left hip. He denied any prior problems in the left hip, although Dr. Garrett testified he had complained of pain there in 1990, when avascular necrosis was diagnosed. Dr. Garrett felt that the problem with the right hip probably accelerated the condition in the left. After replacing the left hip in January 1994, Dr. Garrett was still noting residual pain when he gave his deposition in March 1994. At trial in July 1994 Wilson was more graphic, describing his left hip pain as "the worst pain I've ever experienced in my life." R. p. 408.
Admittedly, Dr. Garrett felt that with the 1990 diagnosis of avascular necrosis Wilson was eventually going to need hip replacements anyway, and that young patients such as Wilson often required a revision. Dep., 45. Nevertheless, but for this accident Wilson would not have undergone one unsuccessful neural operation, and two hip implants as soon as he did, with some 11 months of serious pain for the right hip and several more for the left. Although the testimony is not expansive, it easily shows that the leg pain, on top of the back pain, made him cranky with his family and interrupted his marital relations for about 11 months. Moreover, Wilson was more susceptible to a period of enhanced mental anguish because of his history of health problems. On the special facts presented, we find the jury abused its discretion. The lowest amount it could have reasonably awarded was $80,000. Cf. McGee v. Miears, 516 So.2d 1241 (La. App. 2d Cir.1987); Liner v. Terrebonne Parish Cons. Govt., 612 So.2d 168 (La.App. 1st Cir.1992); Lee v. Missouri Pacific R. Co., 540 So.2d 287 (La.1989). The judgment will be amended accordingly.

Special damages, JNOV
By its third assignment Hardee's urges the district court erred in granting Wilson's motion for JNOV with respect to three items of special damages: future medicals, disability, and Mrs. Wilson's loss of consortium. Hardee's argues that reasonable minds could indeed reasonably differ on these issues and thus the court improperly substituted its own judgment for that of the jury. Anderson v. NOPSI, supra; Roland v. Tedesco, 616 So.2d 780 (La.App. 2d Cir.), writ denied 619 So.2d 579 (La.1993).
By his sixth assignment Wilson challenges as inadequate the JNOV's award of $3,000 to Mrs. Wilson for loss of consortium. He cites Mrs. Wilson's testimony that she lost $3,300 from nursing fees while she stayed at home to care for her husband, and urges this is sufficient proof of her claim. In support he cites Austin v. Pascarelli, 612 So.2d 201 (La. App. 4th Cir.1992), writ denied 614 So.2d 1256, 1257 (La.1993). He also urges that his health problems caused him to cease marital relations with his wife for several months and made him "snappy" with her and the children, thus entitling Mrs. Wilson to general damages of $25,000.
Future medical expenses. The record shows that two and a half years before this accident, Wilson was diagnosed with avascular necrosis in both hips. This condition had already necessitated the replacement of his right hip in March 1990, and Dr. Garrett indicated that the left hip would need replacement in time. Dr. Garrett did not, however, testify that this revision would be the result of the slip; he only stated that in young patients, implants often need revision *1266 anyway. On this evidence, we cannot say the "facts and inferences point * * * strongly and overwhelmingly" in favor of a finding that Wilson would incur an additional $10,000 of medical expenses as a result of this accident. Anderson v. NOPSI, supra. The district court erred in granting JNOV to award this item of damages; the judgment will be amended.
Disability. Wilson testified that since a work-related back injury in 1984 he has been on disability, neither working, seeking work nor taking vocational rehab. R. pp. 411-412. His wife and children draw his disability. R. p. 432. His medical history of three back surgeries in the mid-1980s and three epidural blocks for back pain in 1989 further support his status as totally disabled. He also described an auto accident in 1990 and a collision with a shopping cart at a discount store in May 1992 (five months before the instant slip). In support of this claim, Wilson testified that he had learned to live with his constant back pain, and that the new pain in his right hip after this accident was worse than anything he had experienced before. Mrs. Wilson was unaware of whether her husband still had any residual back pain from the work-related injury, and was not even certain that he was on disability. R. pp. 393-394. On this evidence, there is indeed a "valid line of reasoning and permissible inferences which could possibly lead rational men and women to the conclusion reached by the jury," namely that this injury did not cause Wilson any greater permanent disability than he was destined to have. Roland v. Tedesco, supra. Simply put, there is significant evidence that the disability predated the accident. The judgment will be amended to delete this award.
Mrs. Wilson's loss of consortium. Mrs. Wilson testified, somewhat inconsistently, as to the wages she allegedly lost while she tended her husband during his recuperation.[8] The elements of loss of consortium, however, include loss of love and affection, society and companionship, sexual relations, the right of performance of material services, right of support, aid and assistance, and loss of felicity. Finley v. Bass, 478 So.2d 608 (La.App. 2d Cir.1985). The claimant's loss of income is not an element. Thus the award of $3,000 for Mrs. Wilson's loss of income must be reversed.
However, the record supports a finding that Mrs. Wilson did sustain some damage, albeit minimal, for lost felicity and society. Wilson's hip pain made him "snappy" with her and his children; marital relations ceased for 11 months; there was some tension in the marriage; and her sleep was interrupted. R. p. 387. For these inconveniences, the lowest affirmable award is $2,000, which the judgment will be amended to include. Cf. Odom v. Claiborne Electric Co-Op Inc., 623 So.2d 217 (La.App. 2d Cir.), writ denied 629 So.2d 1171 (La.1993); Daigle v. Johnson, 633 So.2d 268 (La.App. 1st Cir. 1993).

Conclusion
For the reasons expressed, the judgment is affirmed with respect to the liability of the parties and their comparative fault of 50% each. The JNOV is also affirmed insofar as it fixed past medical expenses at $72,709.07. The judgment is amended to increase Wilson's total general damages for pain, suffering and mental anguish from $50,000 to $80,000. The judgment is also amended to decrease the award for loss of consortium from $3,000 to $2,000. Finally, the judgment is reversed insofar as it awarded future medical expenses and disability; these items are deleted. Judgment is therefore rendered in favor of the plaintiff, James Wilson, and against the defendant, Hardee's Food Systems Inc., in the amount of Seventy-six thousand, three hundred fifty-four and .54/1.00 ($76,354.54) dollars; and in favor of the plaintiff, Sherry Wilson, against the defendant, Hardee's Food Systems Inc., in the amount of One *1267 thousand ($1,000.00) dollars, both amounts bearing legal interest from date of judicial demand, April 29, 1993. Costs of appeal are assessed equally to each side.
AFFIRMED IN PART, REVERSED IN PART AND RENDERED.
NOTES
[1] Wilson and his witnesses were unclear as to which employee actually suggested this.
[2] Hardee's insurer, National Union Fire Insurance Company of Pittsburgh, Pa. (misnamed in the original petition and in the caption of the case) was also named as defendant. It was dismissed in the judgment because of the policy's $ 1 million deductible. Ex. D-2.
[3] Amended by La.Acts 1990, No. 1025, § 1, effective September 1, 1990.
[4] Prior to amendment, § 2800.6 provided that in a suit for damages by a person who has suffered damages as a result of a hazardous condition while on the merchant's premises, the person must prove that the accident was caused by a hazardous condition. "The burden of proof then shifts to the merchant to prove that he acted in a reasonably prudent manner in exercising the duty of care he owed to the person to keep the premises free of any hazardous conditions."
[5] Wilson does not contest the jury charge to this effect. R. p. 685.
[6] Mr. Frenzel quoted an internal Hardee's report, Ex. P-43, which adopted the following standard of slip resistance: e = .6 or higher is very safe; e = .5 to .59, relatively safe; e = .4 to .49, dangerous; e = .35 to .39, very dangerous; and e 

[7] Brantley actually holds that it is error for the jury to award general damages but completely deny "clearly proven" special damages.
[8] In answers to interrogatories three months before trial she set these losses at $600 to $700. At trial she calculated her loss of income for the same period at $3,480. R. pp. 384-386. Even though this would have yielded an annual income of about $10,000, she testified that she filed no income tax returns from 1990 through 1993. R. p. 394. She also testified that all her work was on a cash basis for which she had absolutely no records.